# CLARA MUNKEL v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY.[1]

February 25, 1938.

No. 31,438.

[1]Reported in 278 N. W. 41.

*F. W. Root, C. O. Newcomb, A. C. Erdall, C. S. Jefferson,* and *William E. Flynn,* for appellant.

*Duxbury & Roerkohl,* for respondent.

PETERSON, JUSTICE.

Plaintiff, passenger in her husband's truck, was injured when the truck collided with the side of a standing freight train, after nightfall on December 13, 1935, at the outskirts of Hokah, Minnesota, where parallel tracks of defendant, one for passing and a main track, cross state highway No. 16. The tracks extend from northeast to southwest, and intersect, at an angle of about 60 degrees, highway 16, which there runs north and south. On the night in question train 105 was standing with its combination (passenger and mail) car at the Hokah depot, and 16 cars and the engine extending southwest out of Hokah so that the fifth boxcar from the engine blocked highway 16. On the passing track, north of the main track and nearest the truck as it approached on highway 16 from the north, train 172 was standing with its engine facing east, some 15 to 45 feet west of the crossing, with headlight extinguished. There is evidence that the night was foggy and misty and that train 172 was giving off steam and smoke in considerable quantities. No flagman was stationed at the crossing, nor were there any other means used to warn that 105 was standing on the crossing. Train 105 had pulled into Hokah at 6:40 and had given whistle and bell signals as it pulled into town and over the crossing, but after it

had stopped no warnings or signals were given. The collision occurred a few minutes after 6:40 p. m.

Plaintiff and her husband approached in a truck on highway 16 from the north, going about 35 miles an hour until they reached a bridge some 150 feet from the tracks, where they slowed to about 25. They looked for trains as they passed over the bridge and neared the tracks. Plaintiff and her husband had traveled this highway for a number of years and were familiar with the crossing. Plaintiff testified that she looked for trains all the time from their arrival at the bridge until they struck the train. She did not see either of the trains until the boxcar loomed in front of the truck. Her husband testified that immediately after the crash the headlight of the engine on 172 was thrown on, and he then saw that the smoke and steam came from train 172.

Although there was fog and mist along the road through which plaintiff's husband drove from LaCrosse to Hokah, he was able to drive at a speed of about 35 miles per hour in safety. The steam and smoke emitted by the engine on the passing track drifted across the highway in front of the standing train and mixed with the fog and mist so that the train was not visible. Although the mixture of fog, mist, smoke, and steam was impenetrable, it had the same appearance to plaintiff and her husband before they entered the same as the fog and mist through which they were able to see and had safely driven at 35 miles per hour on their way from LaCrosse. Neither plaintiff nor her husband realized the character of the same until after they were right in it. The husband, describing what he saw at the time, testified:

"Well, all I seen was the white mist and the fog, and the first thing I knew it was just like coming out of a cloud and I hit the boxcar and then they threw on the light on the engine."

As plaintiff and her husband approached the railroad tracks they both looked both ways to see if the crossing could be safely made. The husband did not see anybody with a lantern there to warn that a train was on the track, which was the custom when a train was in fact there. Contrary to the custom, defendant did not give a

warning that the train was on the track. The husband's testimony is:

"I slacked up; I slowed up the speed and I looked both ways and I couldn't see anything and there was no man there with a lantern like there usually is, so I kept right on going, I didn't see anybody there, and I hit."

He assumed that because there was no warning as was customarily given in such cases the way was open, and so proceeded into the fog and mist and then hit the train. The evidence does not show that the husband could not have seen a man with a lantern or other signal through the mixture of fog, mist, smoke, and steam.

Plaintiff charged that defendant was negligent in obscuring the train, standing across the highway, by smoke and steam combining with darkness, fog, and mist, thereby subjecting her to the danger of a collision with the train; and in failing to give any warning or signal to apprise her of the danger to which defendant's acts exposed her. The court below instructed the jury that plaintiff was entitled to recover only if the situation at the crossing was extrahazardous because of the peculiar and unusual circumstances there existing, to which the negligent acts of the defendant contributed. Plaintiff had a verdict, and defendant appeals.

■ Liability is predicated on defendant's negligence. Defendant contends that it cannot be charged with negligence because it had complied with the requirements of the railroad and warehouse commission to install certain crossing signs. A railroad company is bound to take such precautions in the management and operation of the railroad as public safety requires, though such precautions may be in addition to the requirements prescribed by statute or the railroad and warehouse commission. Licha v. N. P. Ry. Co. 201 Minn. 427, 276 N. W. 813; Crosby v. G. N. Ry. Co. 187 Minn. 263, 245 N. W. 31; Pokora v. Wabash Ry. Co. 292 U. S. 98, 54 S. Ct. 580, 78 L. ed. 1149, 91 A. L. R. 1049.

■ Ordinarily, a railroad company is not negligent in operating or permitting a train to stand across a public highway either in the day or nighttime. A train on a crossing is visible to drivers on the

highway, including automobile drivers whose cars are equipped with lights and who exercise ordinary care. It has often been said that the train itself is an effective and adequate warning. But this is not always so. Peculiar and unusual facts and circumstances making the crossing an exceptional or unusually dangerous one may require the taking of such precautions as prudent management with respect to public safety requires, though such precautions may be in addition to the requirements under ordinary conditions. Licha v. N. P. Ry. Co. and Crosby v. G. N. Ry. Co. *supra;* Ausen v. M. St. P. & S. S. M. Ry. Co. 193 Minn. 316, 258 N. W. 511. In an annotation in 99 A. L. R. 1455, the rule is stated as follows:

"However, the railroad company's duty is not necessarily discharged under all circumstances if it fails to give warning in some form of the presence of the obstruction. The atmospheric conditions, obscurity and darkness of the crossing, the length of time it is obstructed, and the nature of the highway, may require that warning be given if the company is to be found in the exercise of due care. The recent decisions support these general propositions."

Where conditions, proximately caused in whole or in part by a railroad company's acts or omissions, obstruct or interfere with the view of a train on a crossing, the railroad company may be found guilty of negligence. Licha v. N. P. Ry. Co. *supra;* Polchow v. C. St. P. M. & O. Ry. Co. 199 Minn. 1, 270 N. W. 673; Lawler v. M. St. P. & S. S. M. Ry. Co. 129 Minn. 506, 152 N. W. 882. While a railroad may have the right to reasonably obstruct a highway, it has no right to obscure the obstruction which it has placed there. The performance of a lawful act in a manner so as to endanger others is negligence. Allowing smoke and steam to obstruct the view of the highway and the train standing across the same permits a finding of negligence. In Pisarke v. Wisconsin T. & C. Co. 174 Wis. 377, 183 N. W. 164, the defendant was held liable for negligence in permitting steam and vapor to escape into the street from its engine in such a manner as to obscure the view of a motorist who ran into plaintiff, who was then a pedestrian upon the highway. In Farrer v. Southern Ry. Co. 45 Ga. App. 84, 163 S. E. 237, a railroad was

held liable for negligence in burning grass and weeds in such a manner that the smoke drifted across the highway so as to blind travelers who became enveloped in it on the highway. The court held that although the defendant was engaged in a lawful act, "if guilty of negligence in so doing as against the person traveling along the road, [it] is liable in damages to him for the injuries thus received which proximately result from such negligence." In Keith v. Yazoo & M. V. R. Co. 168 Miss. 519, 151 So. 916, a railroad's negligence in burning grass and weeds on the right of way on a winter day so that the smoke was blown across a near-by highway so as to endanger automobile drivers was held to be a question for the jury. In Fisher v. Southern Pacific Co. 72 Cal. App. 649, 237 P. 787, a railroad company was held liable for permitting smoke from burning brush to drift across the highway so as to obscure the view of motorists. Railroads have been held liable in somewhat analogous circumstances. They have been held liable for permitting an approaching train to be obscured by smoke and steam emitted by a train on a passing track, Borough v. M. & St. L. Ry. Co. 184 Iowa, 210, 167 N. W. 177; Ommen v. Grand Trunk W. Ry. Co. 204 Mich. 392, 169 N. W. 914; for permitting a switch engine which was moving slowly to become so enveloped in steam which it was emitting that a traveler could not tell whether it was moving or standing still, McGinley v. Maine Cent. R. Co. 79 N. H. 159, 106 A. 641; for obscuring the view of approaching trains by smoke combining with fog, Upton v. Hines, 193 Iowa, 385, 185 N. W. 561; *Id.*, 197 Iowa, 566, 197 N. W. 453; Lake Erie & W. R. Co. v. Douglas, 71 Ind. App. 567, 125 N. E. 474; for obstructing the view by a pile of logs and standing boxcar in foggy weather, Olive v. Director General of Railroads, 275 Pa. 173, 118 A. 763; for negligently backing a train in blinding snow and darkness, Grippen v. N. Y. Cent. R. Co. 40 N. Y. 34; for permitting a train to stand on crossing at night, Spiers v. Atlantic Coast Line R. Co. 174 S. C. 508, 178 S. E. 136; for obstructing a highway by placing a railroad car across the highway on a dark, foggy morning, Elliott v. Mo. Pac. R. Co. 227 Mo. App. 225, 52 S. W. (2d) 448. Smoke and atmospheric conditions may always be considered on the question of contributory negli-

gence. Lawler v. M. St. P. & S. S. M. Ry. Co. *supra;* Heaney v. Long Island R. Co. 9 N. Y. St. Rep. 707.

We have examined the evidence with respect to the claims of fog and smoke and steam. It is admitted that the collision occurred in darkness. Defendant produced witnesses who testified that there was no fog or mist, that the locomotive on the passing track was not emitting any smoke or steam, and that the wind was in such a direction as to carry it away from the crossing rather than upon it. Plaintiff produced witnesses who testified to the existence of all of these conditions. The issue was one of fact for the jury. The verdict has the approval of the trial court and is amply sustained by the record.

The signs installed pursuant to the orders of the railroad and warehouse commission were ineffectual to apprise plaintiff and her husband of the situation. They were sufficient to warn them that they were approaching a railroad crossing, but they knew this without the aid of such signs. If it were not for the impenetrable fog and mist, mixed with the steam and smoke coming from the engine on the passing track, plaintiff and her husband would have seen the train on the track, and it would have been, as the courts have often held, an adequate and effective warning to them. Plaintiff and her husband were not aware of the situation created by defendant until they were in the midst of the dense mixture of smoke, steam, fog, and mist, which was too late to avoid the collision. A court cannot hold as a matter of law that a person is able to distinguish smoke and steam from mist and fog. Lortz v. N. Y. C. & H. R. R. Co. 7 App. Div. 515, 40 N. Y. S. 253. The question was one of fact for the jury and its finding is sustained by the evidence.

■ The evidence justified a finding that it was the custom of defendant to warn travelers when a train was standing across the highway and that the custom was known to plaintiff's husband, who was the driver of the automobile. The customary warning was not given. A visible warning could have been given. The withdrawal of the customary warning justifies a finding of negligence. McGrath v. N. Y. C. & H. R. R. Co. 63 N. Y. 522; Burns v. North Chicago Rolling Mill Co. 65 Wis. 312, 27 N. W. 43; St. Louis S. W. Ry. Co.

v. Boyd, 56 Tex. Civ. App. 282, 119 S. W. 1154; notes, 16 A. L. R. 1273; 71 A. L. R. 1175. We have recognized the rule. In Woehrle v. Minnesota Transfer Ry. Co. 82 Minn. 165, 169, 84 N. W. 791, 793, 52 L. R. A. 348, we held that the withdrawal of the customary flagman "was in effect an assertion by the defendant that the way was clear, and that the plaintiff might cross in safety. This is so to the same extent that it would have been if, instead of a flagman, the defendant had kept gates at the crossing, which were always closed when it was dangerous, and open when it was safe, to go upon the crossing." We further said that "the absence of the flagman is an assurance to the traveler of safety, and an implied invitation to make the crossing, upon which he may to some extent, but not entirely, rely, and presume that it is safe for him to do so, and act upon the presumption, within reasonable limits."

A finding of negligence may be made in such a case even though the railroad company is not under a duty to maintain a flagman or give signals at a particular crossing. 71 A. L. R. 1175.

■ The claim is made that the husband's negligence was the sole cause of the collision. Assuming that the husband was negligent, the conclusion does not necessarily follow. If he were negligent and the defendant were not negligent, then his negligence would be the sole cause of the collision. But if only the defendant, or both the husband and defendant were negligent, the negligence of the defendant would be a proximate cause of the collision. If there was negligence on the part of both the husband and the defendant, the negligence of each would be concurrent cause of the collision. In any event, defendant cannot escape liability if it was negligent. Thorstad v. Doyle, 199 Minn. 543, 273 N. W. 255; Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605; Wicker v. North States Construction Co. Inc. 183 Minn. 79, 235 N. W. 630; Pisarke v. Wisconsin T. & C. Co. 174 Wis. 377, 183 N. W. 164; Keith v. Yazoo & M. V. R. Co. 168 Miss. 519, 151 So. 916.

■ Plaintiff cannot be held guilty of contributory negligence as a matter of law. The evidence shows that plaintiff looked and did not see the train on the track. The jury was justified in finding that the reason she could not see the train was because defendant's acts

obscured her view of it. We have held in similar cases that the negligence of the driver of an automobile is not imputable to a passenger, Thorstad v. Doyle, *supra*. The marital relation itself does not make the wife chargeable with the husband's negligence in operating an automobile. Kokesh v. Price, 136 Minn. 304, 161 N. W. 715, 23 A. L. R. 643; Olson v. Kennedy Trading Co. 199 Minn. 493, 272 N. W. 381.

■ We have examined the assignments of alleged misconduct of counsel for the prevailing party. The trial court found that they were not such as to affect the result. It was in a better position than we are to determine this question. There is nothing to indicate that its views are not correct. It would serve no useful purpose to encumber the record with discussion of the matter.

Affirmed.

JULIUS J. OLSON, JUSTICE (concurring specially).

I concur in the result for the reason that the court below properly limited the question of negligence so as to do away with any claim of inadequacy of signs at the involved crossing.

In its instructions it said that the defendant was "under no obligation to provide a watchman with a light or other means of warning the plaintiffs of the presence of the train upon the crossing * * * unless the situation there was extrahazardous because of peculiar and unusual circumstances arising out of the combination of the weather conditions, coupled with smoke or steam escaping from the engine on the passing track * * *" It then proceeded as follows: "In order to recover in this action, therefore, the plaintiffs must prove by a fair preponderance of the evidence: first, that the situation was extrahazardous because of peculiar and unusual circumstances arising out of the weather conditions, coupled with smoke and steam escaping from the engine on the passing track and the lack of lights showing or indicating the presence of the train on the crossing; second, that common prudence required a warning of the presence of the train to be given to approaching motorists; and third, that the company was negligent in not giving such warning. If all of these facts are proven, then the plaintiffs

are entitled to recover compensation for the damages that they sustained as the result thereof, unless they were themselves negligent and their negligence contributed to the happening of the accident."

In its memorandum attached to the order here for review the court in commenting upon requirements of the statute and the orders of the railroad and warehouse commission respecting crossing signs said:

"Concededly there is nothing in any of these sources touching the present case. * * * The situation, according to the jury's finding, was extrahazardous, and one of defendant's own making."

And that this was the vital issue plaintiff in her brief clearly concedes:

"We do not question those cases cited by the defendant to the effect that one who drives his vehicle into a railroad train obscured by fog is guilty of negligence which is the sole proximate cause; both the railroad and the motorist must operate in a careful manner, having in mind this additional natural hazard. Neither do we question those cases to the effect that a motorist who drives his vehicle into smoke from a railroad train and strikes some object obscured thereby is guilty of negligence which is the sole proximate cause; railroad engines necessarily give off smoke and steam and under proper circumstances it may be permitted to drift across a highway; the smoke or steam can be seen and is its own warning." But in avoidance of what is here quoted, she proceeds thus: "The foggy condition obscured the drifting smoke and steam which in turn obscured the boxcars standing on the crossing. In this situation the railroad company gave no warning to the motorist, although its enginemen were in the cab and its brakemen were in the caboose; there was no light. It is clear that the boxcars on the highway would have been seen except for the smoke and steam obscuring them, and that the smoke and steam would have been seen except for the fog. * * * *It was a trap made by the railroad company.*" (Italics supplied.)

Therefore there can be no doubt that the facts in this case are not in any way similar to what was decided in Olson v. C. G. W. R. Co. 193 Minn. 533, 259 N. W. 70, and the other cases therein relied upon. That case involved the alleged lack of adequate crossing signs as a basis for liability. The same question was presented in the Licha case. Neither case is involved here.

Defendant having created, as the jury found, a dangerous situation, the resulting harm to plaintiff can well be said to be at least a concurring cause to her injuries. (The jury found for defendant in the husband's case; hence it logically follows that as to him it found contributory negligence.)

I can see nothing wrong about the result here reached and therefore concur therein.

I am authorized to say that Mr. Justice Holt concurs herein.

Mr. Justice Stone, because of illness, took no part in the consideration or decision of this case.

