## DELORES J. SEEKINS v. DULUTH, MISSABE & IRON RANGE RAILWAY COMPANY.

103 N. W. (2d) 239.

May 27, 1960—No. 37,886.

*William H. DeParcq* and *Robert N. Stone,* for appellant.
*William O. Bissonett* and *John F. McGrath,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for damages sustained when plaintiff, a passenger in an automobile owned and operated by her husband, was injured when the latter drove it into defendant's ore train while it was in a stationary position on a crossing at South Grove Road near South Grove Addition to Mountain Iron, St. Louis County. At the close of the testimony, the trial court directed a verdict in favor of defendant railroad. Plaintiff's motion for a new trial was denied, and this is an appeal from the judgment entered for defendant.

In directing the verdict, the trial court stated:

"* * * plaintiff's position being that the principal element of negligence on the part of the defendant was failure to furnish extra warning signals, on the basis that the crossing in question was an extra-hazardous crossing, and the Court being of the opinion and having stated that no fact issue was presented as to whether there was an extra-hazardous crossing and that that claim of neglience would not be submitted to the jury, * * *,

"It is ordered that a directed verdict be entered in favor of the defendant and against the plaintiff."

In a memorandum attached to the order denying plaintiff's motion for a new trial, the court stated:

"* * * Inasmuch as all of the evidence presented would not sustain the jury's finding that the crossing in question was an extra hazardous crossing, defendant was entitled to a directed verdict in its favor."

On appeal plaintiff contends that the evidence was sufficient to create a jury question as to whether, under the circumstances existing at

the time of the accident, the crossing was an extrahazardous one so as to require defendant to give notice or warning to approaching vehicular traffic as to the presence of the train on the crossing, in addition to the statutory requirements pertaining to signals and safeguards at crossings.

In support of this contention plaintiff directs attention to evidence submitted at the trial as follows: The accident happened September 18, 1957, at 3:15 a. m., central daylight saving time. The train, comprised of ore cars which blocked the crossing, was in a stationary position, having stopped to allow the rear brakeman to descend from the last car to set a derail device. One ore car occupied all that portion of the track over which South Grove Road crossed. The train had been in this position for about 2 to 2½ minutes before the accident. At the location of the accident, South Grove Road runs in a general northerly and southerly direction and crosses defendant's tracks, which run easterly and westerly, at right angles. When the automobile collided with the standing ore car on the tracks, the driver was killed and plaintiff suffered severe, permanent injuries, for which she brought this action.

Testimony was submitted that the driver was operating the automobile at about 30 miles per hour while he approached the crossing. South Grove Road approaches the crossing in a straight line a distance of about 1,200 feet from the north, the direction in which the automobile was traveling. The crossing is at the bottom of a grade in the highway which varies from 2 to 6 degrees from a point about 1,200 feet to the north. The highway ascends from the tracks to the south of the crossing for a distance of about 1,200 feet at a 2- to 6-degree grade.

There was testimony that on the night of the accident there were no lights at this crossing; that the weather was rainy and misty; that visibility was very bad; that South Grove Road has a blacktop surface and was wet from prior rain and mist; that the ore car on the highway was dark and blended with the background and the highway as it ascended to the south of the crossing; that it was a dark, misty, foggy night from Mountain Iron to where the accident happened; that the automobile lights were on low beam or "using dimmers"; and that plaintiff and the driver did not see the ore car on the crossing until about 30 feet from it.

Experts testified that because of the downgrade visibility is ham-

pered and the headlights of an approaching automobile will cast their light below a car standing on the tracks; that the tarvia, being black, absorbs light and affects visibility; and that mist and drizzle will affect visibility; that grades leading down to and up from the crossing are edged with banks or cuts which hamper visibility; and that trees and foliage along the road also hamper visibility.

Photographs were submitted by both plaintiff and defendant. Examination of these photographs discloses that to the north and south of the crossing the highway is straight, the grade slight, and that there were no trees or foliage closely adjacent to it.

There was testimony that plaintiff and her husband lived in the vicinity of this crossing and had crossed it hundreds of times during the two-year period in which they lived at South Grove; that there is a railway sign on the side of the road about 400 feet north of the crossing and two crossbuck signs 25 feet back from the rails on either side thereof; that all requirements of the Railroad and Warehouse Commission with reference to signs and signals had been complied with; that no lighting is required thereunder; and that for about 500 feet north of the crossing the grade is only 2 percent.

■ The applicable legal principles are well established. Under the circumstances presented here, it was not negligence for the railroad company to allow its train to stand on the crossing. Crosby v. G. N. Ry. Co. 187 Minn. 263, 245 N. W. 31; Ausen v. Minneapolis, St. P. & S. S. M. Ry. Co. 193 Minn. 316, 258 N. W. 511. In the absence of a showing that a crossing is extrahazardous, compliance with the statutory requirements as to signals and safety devices at crossings fulfills the railroad's duty in so far as it concerns reasonable care to afford warning devices. Blaske v. N. P. Ry. Co. 228 Minn. 444, 37 N. W. (2d) 758. A person about to cross a railroad track must use his senses to discover any impending danger. Olin v. Minnesota Transfer Ry. Co. 164 Minn. 512, 205 N. W. 440. A train occupying a crossing is of itself a warning to approaching traffic. Flagg v. Chicago G. W. Ry. Co. (8 Cir.) 143 F. (2d) 90; Chicago, M. St. P. & P. R. Co. v. Slowik (8 Cir.) 184 F. (2d) 920. Those in charge of operation of railroad trains have the right to assume that persons traveling by automobile at

night will adopt such lights and drive at such rate of speed as will enable them to see a train of cars at a public crossing and to stop before coming in collision with it. See, Mlenek v. Fleming, 224 Minn. 38, 27 N. W. (2d) 800. Unusual facts or circumstances which make a railroad crossing an unusually dangerous one may require the taking of extra precautions with respect to safety requirements. Licha v. N. P. Ry. Co. 201 Minn. 427, 276 N. W. 813; Rhine v. Duluth, M. & I. R. Ry. Co. 210 Minn 281, 297 N. W. 852. The added hazards brought on by darkness, with nothing more, are not to be charged in the form of adverse verdicts against railroads. All crossings are built for both day and night use. Sullivan v. Boone, 205 Minn. 437, 286 N. W. 350.

■ If the evidence supports a finding that the crossing was not extrahazardous on the night in question, the court was correct in directing a verdict for defendant. It is our opinion that in so far as the crossing itself is concerned it is not extrahazardous but typical of hundreds of crossings in open country throughout the state. The fact that there is a moderate slope down to it on the highway from the north and up from it to the south would not in itself affect visibility. No trees or other obstructions are closely adjacent to it. Massmann v. G. N. Ry. Co. 204 Minn. 170, 282 N. W. 815. No sharp turns or curves conceal it. If it can be said that it was extrahazardous on the night in question, it would only be so because the surrounding atmospheric conditions at the time made it so. Giving full credence to plaintiff's witnesses would require a finding that the weather was damp and misty; that it was a dark, misty, foggy night all the way from Mountain Iron down to where the accident occurred; and that such conditions made visibility very poor. The question then arises would such atmospheric conditions require defendant to take extra precautions while its ore car was stationed across the highway.

■ Under the decision of this court in Rhine v. Duluth, M. & I. R. Ry. Co. *supra,* we must conclude that the court was correct in directing a verdict for defendant on the question whether the crossing was so extrahazardous at the time as to require extra precautions. The evidence relied upon in the Rhine case to establish that the crossing was extrahazardous is similar but somewhat stronger than in the instant

case. There an automobile collided with a moving ore car on a crossing in open country at about the same time of night. There was testimony that the tracks were at the bottom of a downgrade; that a dense fog at the scene of the accident reduced visibility substantially; that the required warning signs were in place; that the train was not seen by the automobile driver until he was about 30 feet from the crossing when it was too late to stop; and that the speed of the automobile was estimated at 30 to 35 miles per hour. There, in deciding that such conditions did not establish facts sufficient to sustain a finding that the crossing was extrahazardous, this court stated (210 Minn. 284, 297 N. W. 854):

"The crossing here involved is in open country. It is not so hazardous to the public as to require warnings in addition to those prescribed by the railroad and warehouse commission. It was not shown that the usual fog conditions were of such a character as to justify a finding that ordinary care required the installation of fog warnings. Licha v. N. P. Ry. Co. 201 Minn. 427, 276 N. W. 813; Munkel v. C. M. St. P. & P. R. Co. 202 Minn. 264, 278 N. W. 41. As emphasized in Massmann v. G. N. Ry. Co. 204 Minn. 170, 282 N. W. 815, and Sullivan v. Boone, 205 Minn. 437, 286 N. W. 350, the decision in the Licha case, here relied upon by plaintiff, only applies the rule of commensurate care to a railroad crossing. Unless conditions at a crossing create hazards to the public that justify a finding that the warnings of the existence of the crossing required by the commission do not constitute ordinary care, no further warning is required other than that prescribed by the commission. L. 1925, c. 336, 1 Mason Minn. St. 1927, §§ 4743-1 to 4743-17. * * *

"The decision * * * in * * * Duluth, Winnipeg & Pacific Ry. Co. v. Zuck (8 Cir.) 119 F. (2d) 74, * * * relied upon by plaintiff, is distinguishable. There plaintiff offered evidence to show frequent fogs at the crossing in question. In the present case there was no such showing, the testimony being confined to the foggy conditions existing at the crossing and at some places in the vicinity thereof on the night of the accident."

See, also, Cameron v. N. P. Ry. Co. 234 Minn. 355, 48 N. W. (2d)

540; Leisy v. N. P. Ry. Co. 230 Minn. 61, 40 N. W. (2d) 626; Schukart v. Gerousbeck, 194 Ore. 320, 241 P. (2d) 882.

■ We recognize that in a number of cases this court has held that this question may be for the jury. Licha v. N. P. Ry. Co. *supra;* Munkel v. Chicago, M. St. P. & P. R. Co. 202 Minn. 264, 278 N. W. 41; Koop v. G. N. Ry. Co. 224 Minn. 286, 28 N. W. (2d) 687. None of the facts in such cases as closely parallel those in the instant case as do the facts in Rhine v. Duluth, M. & I. R. Ry. Co. *supra.* Thus, in Licha v. N. P. Ry. Co. *supra,* the accident was on a main thoroughfare in St. Paul and the fog was of such density that the lights did not pierce it. In Munkel v. Chicago, M. St. P. & P. R. Co. *supra,* the accident occurred on the outskirts of a municipality at a crossing where the tracks did not intersect the highway at right angles; where defendant permitted substantial quantities of steam and smoke from another train to mingle with the fog and mist so that the train was not visible; and where the railroad had not followed its usual custom of providing an employee with a lantern to warn the public when a train was on the crossing. Koop v. G. N. Ry. Co. *supra,* is distinguished principally by the fact that the crossing was located within the city of St. Cloud rather than in open country as in the instant case. There we upheld submission to the jury of the question whether the crossing was extrahazardous, although there appears to have been disagreement on this issue, and the case was reversed on other grounds. In view of the close similarity between the instant case and Rhine v. Duluth, M. & I. R. Ry. Co. *supra,* we must conclude that the trial court was correct in directing a verdict in favor of defendant on the issue of negligence.

Affirmed.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.