**DULUTH, W. & PAC. RY. CO. v. ZUCK.**

No. 11874.

Circuit Court of Appeals, Eighth Circuit.

April 14, 1941.

William O. Bissonett, of Duluth, Minn. (Gillette, Nye, Harries & Montague, of Duluth, Minn., on the brief), for appellant.

I. K. Lewis, of Duluth, Minn. (C. G. Lindquist and Lewis Grannis & Underhill, all of Duluth, Minn., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by appellee, Lula B. Zuck, plaintiff below, against appellant, Duluth, Winnipeg & Pacific Railway Company, to recover damages for personal injuries received by her as the result of a collision between an automobile in which she was riding and a moving freight train of the Duluth, Winnipeg & Pacific Railway Company. It will be convenient to refer to the parties as they appeared below.

Plaintiff's three children were in the automobile with her at the time of the accident. Her daughter Lorene was driving and her daughter Lillian was sitting in the front seat with Lorene, while plaintiff and her son William sat in the back seat. Plaintiff's home was in Duluth but she was a trained nurse and had been nursing in a home at Hibbing for a week previous to the accident. Her children went to Hibbing to take her home to Duluth so that she might see a sister who had come from Oklahoma to visit her. The children arrived at Hibbing about 11 o'clock p. m., and with the plaintiff left for Duluth about midnight on May 15, 1937. The automobile at the time of the accident was being driven in an easterly direction on a paved highway, County Highway No. 61, which is intersected by the defendant's railway at right angles. Just before the automobile came to this intersection, a freight train consisting of fifty-one cars was passing in a northerly direction toward Virginia, Minnesota. As the automobile approached the intersection from the west, none of the surviving occupants heard any whistle or bell of the engine, nor did they hear the noise of the train as it was passing over the intersection. The automobile collided with the fifty-first car, a refrigerator car just ahead of the way car, killing the daughter Lillian and injuring the plaintiff and her daughter Lorene. The first realization the occupants of the automobile had of the impending danger was when Lillian exclaimed, "Oh, Lorene, there is a freight train." At that time the automobile was within a few feet of the moving train, and it was impossible to stop the automobile in time to avoid the collision although it was moving at a rate of only 10 to 15 miles an hour. As the automobile approached the railroad crossing, the locality was enveloped in a dense fog, making it impossible for the occupants of the car to see the railroad crossing sign or the moving train, or any object, farther than 10 feet ahead of their car. The driver of the car, the moment she observed the passing freight train, put on the brakes but was unable to stop before striking the freight train.

It was the contention of the plaintiff that the railroad crossing at nighttime was peculiarly hazardous and unusually dangerous by reason of the frequency with which dense fogs accumulated in the vicinity of the crossing, particularly during the spring and fall months, and that the defendant was negligent in having failed to install and maintain at this crossing different and additional signals which would more adequately have warned plaintiff and the traveling public of the existence of the crossing. There was testimony which we shall hereafter refer to in more detail, with reference to the frequency of dense fogs in the locality of this crossing.

The defendant, contending that it was guilty of no actionable negligence because it had installed and was maintaining the crossing signals approved by the Railroad and Warehouse Commission of the State of Minnesota, and that the crossing was not unusually hazardous, and that contributory negligence of all the occupants of the plaintiff's car had been established as a matter of law, moved for a directed verdict at the close of all the testimony. The court denied this motion and submitted the case to the jury upon instructions to which no exceptions are here urged. The jury returned a verdict in favor of the plaintiff, assessing her damages at $2,000. Thereafter defendant moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial, which motion was denied and this appeal followed.

The determining question is whether the court erred in denying defendant's motion for a directed verdict. The accident having occurred in Minnesota, the rights, duties and liabilities of the parties must be determined under the laws of that state. A railroad company is, of course, not an insurer of the safety of those who use the public crossings. It is, however, bound to exercise ordinary care, dependent upon the situation and surroundings of the crossing, and commensurate with the danger involved. The purpose of the crossing signs is to give warning of the presence of a railroad crossing. The defendant here had complied with the statutory requirements with reference to the installation and maintenance of crossing signs, and under ordinary conditions this would doubtless measure its responsibility. But the statutory requirements "are the minimum duty of the railway company." Ordinary care may require more, and unusual facts and circumstances may render a crossing an exceptional or dangerous one requiring precautions in addition to those prescribed by statute or order of the Railroad and Warehouse Commission. Licha v. N. P. Ry. Co., 201 Minn. 427, 276 N.W. 813; Crosby v. G. N. Ry. Co., 187 Minn. 263, 245 N.W. 31; Massmann v. G. N. Ry. Co., 204 Minn. 170, 282 N.W. 815.

Does the evidence sustain the contention that this crossing was one of unusual hazard? It is pointed out here by the defendant that the highway intersects the railroad at right angles; that the railroad is straight for a very considerable distance toward the north and toward the south of this crossing, and that the highway is level and straight for a long distance on either side of the crossing. Hence, it is argued that there was nothing about the physical construction nor surroundings of the crossing which rendered it one of unusual or extra hazard. There is in fact no claim of physical characteristics which would render this crossing an extra hazardous one. The claim is that the peculiar hazard arose by reason of the frequency with which dense fogs accumulated in the immediate vicinity of this crossing. In view of the verdict of the jury, we must accept the evidence favorable to the plaintiff as true, and she is also entitled to the benefit of such reasonable inferences as may arise therefrom. If, when so considered, reasonable men might reach different conclusions, then the case is one for the jury. Champlin Refining Co. v. Walker, 8 Cir., 113 F.2d 844. So construed, the jury might have believed from the evidence that dense fogs frequently enveloped this crossing during the spring and fall months, while other sections of the country not far distant were entirely free from fog; that the territory immediately adjacent to and surrounding this crossing was low, swampy peat land and that pockets of fog would accumulate there with such density that one's visibility was limited to a matter of 10 or 15 feet, or thereabouts; that very heavy fogs often hang close to the ground; that it had frequently been observed when one drove over the road that there was no fog on other parts of the highway, while this territory was enveloped in a heavy fog; that this condition occurred "about three nights out of the week and sometimes more, four nights sometimes, but it would average about three"; that when these fogs descended on this particular area the crossing signs and signals which defendant maintained were wholly inadequate to warn the traveling public of the existence of the railroad crossing because they were not visible; that there were in existence and in common use signals or signs equipped with red lights, either moving or stationary, when a train approaches and passes over an intersection and that there were in use the so-called crossbuck railroad signs equipped with reflector buttons; that such signs would have been visible to the traveling public even when this crossing was enveloped in fog. The evidence warranted the jury in believing that this condition had

existed for such a length of time that the defendant in the exercise of ordinary care was bound to know of its existence. In fact, defendant's locomotive engineer testified that the surrounding country was peaty, boggy and wet and that heavy fogs occurred in pockets and that the crossing was "a dangerous crossing." Defendant's conductor in charge of the train involved in the accident testified that for five years he had run over this line and that fog prevailed at the crossing at least two or three times during the week in the spring of the year; that the surrounding territory was a "peaty, swampy stretch," and that he observed fog hanging over this low land on nights when no fog was observed on the higher land. The crossing was in the country but on a hard surface road, over which there was heavy traffic consisting mostly of motor vehicles.

In Licha v. N. P. Ry. Co., supra, the Supreme Court of Minnesota not only held that the requirements of the Railroad and Warehouse Commission with reference to the maintenance of crossing signs did not relieve the railroad from the general duty of exercising ordinary care, but that if prudent management and operation of the railroad required additional precautions for public safety, it was the duty of the company under such circumstances to take such additional precautions. In Crosby v. G. N. Ry. Co., supra [187 Minn. 263, 245 N.W. 32], the court said: "Undoubtedly cases do and will arise where a railroad company, because of peculiar and unusual facts and circumstances rendering the situation extrahazardous, must in the exercise of reasonable care do things which are not required by statute."

In Massmann v. G. N. Ry. Co., supra [204 Minn. 170, 282 N.W. 817], the court said: "In short, the Licha Case applies the principle of ordinary care to all crossings and to all situations relating thereto and holds that the statutory requirements are the minimum duty of the railway company, that ordinary care may require more than the statute and that under special circumstances the mere presence on the crossing of standing or moving unlighted cars such as freight cars may not be adequate warning of the obstruction of the highway."

▮ Here it appears from the undisputed testimony that the presence of the moving freight train upon this crossing was not an adequate warning owing to the prevailing density of the fog in that particular vicinity. The Licha case, to be sure, involved a dip in the road, as well as a fog which made it difficult for the lights of an approaching automobile to shine on the cars of a train, if there were one upon the crossing. But if the crossing is rendered hazardous or dangerous, it would not seem to be material that the hazard was one created by the railroad. This is not the case of an occasional, unusual or unexpected atmospheric condition, but a condition known by the railway company to have existed for a long time prior to this accident. Faced with the knowledge of these conditions which resulted in an extra hazard, it was the duty of the railway company to exercise ordinary care to give warning of the presence of the crossing, and the jury may well have found that prudent management with respect to public safety required the railway company to install and maintain additional or more adequate signals.

▮ It is also urged that the plaintiff was guilty of such contributory negligence as to preclude her right to recover. The question of negligence and contributory negligence is ordinarily one of fact for the jury. Champlin Refining Co. v. Walker, supra; May Department Stores v. Bell, 8 Cir., 61 F.2d 830; Nielsen v. Richman, 8 Cir., 114 F.2d 343; Brinegar v. Green, 8 Cir., 117 F.2d 316. Neither the plaintiff nor her daughter who was driving the car at the time of the accident had ever been over this highway before, and they had no previous knowledge of the existence of the grade crossing. Plaintiff was not only not driving the automobile, but she did not know how to drive. She was riding in the rear seat and had no control over the movements of the car. The jury may well have found that she not only did not but could not see the train as it was passing over this crossing, and in that situation it is difficult to say that there was anything she could have done to avoid the accident. On this issue the burden of proof was upon the defendant. Nielsen v. Richman, supra. The issue was submitted to the jury, and we cannot say that their verdict is without support in the evidence. The case was tried with great care and fairness by the lower court, and we are satisfied that the record shows no reversible error.

The judgment appealed from is therefore affirmed.