## FLAGG v. CHICAGO GREAT WESTERN RY. CO.

### No. 12790.

Circuit Court of Appeals, Eighth Circuit.

June 19, 1944.

Frank E. McAllister, of St. Paul, Minn. (Stacker & Stacker, of St. Paul, Minn., on the brief), for appellant.

Harry S. Stearns, of St. Paul, Minn. (Harry S. Stearns, Jr., and Michael N. Lyons, Jr., both of St. Paul, Minn., on the brief), for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

In an action for damages for the wrongful death of her deceased husband, plaintiff, as special administratrix, appeals from a judgment entered upon a verdict directed for the defendant.

The accident in which plaintiff's decedent was killed occurred at a crossing in the country when an automobile driven by the decedent ran into the side of a moving train. The verdict was directed upon motion of the defendant made at the conclusion of plaintiff's testimony, on the grounds (1) that no actionable negligence of defendant was shown and (2) that the evidence established contributory negligence of the decedent as a matter of law.

In reviewing the evidence to determine whether the court erred in so directing a verdict, it is elementary that we must accept as true the evidence favorable to the plaintiff and accord her the benefit of all reasonable inferences which may be drawn therefrom. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115, 118; Champlin Refining Co. v. Walker, 8 Cir., 113 F.2d 844, 846.

The collision occurred about 3 o'clock in the morning of October 11, 1941, at the intersection of the defendant's double track railroad and a loose-graveled county highway near Eden, Minnesota. At that point the tracks run in a north-south direction and the highway crosses them at right angles running from east to west. The decedent Flagg was driving the automobile. He and two companions, his cousin R. L. Campbell sitting next to the driver and one Cornwell on the right hand side, all in the front seat, were going west from Mantonville to West Concord. The decedent did not know the exact road over which they were traveling and Campbell directed him.

Campbell was the only eye witness called to testify at the trial. He testified that as they approached the crossing they were traveling at a speed of approximately 35 miles per hour. The car was in good mechanical condition with respect to brakes and lights. At the speed they were moving the car could have been stopped in about 60 feet. With the aid of the lights one could see 100 feet or more ahead of the automobile. The night was cool, calm and dark. Campbell knew they might be coming to a railroad crossing, but he did not know its exact location.

When they were 40 or 50 feet from the tracks they suddenly observed a cloud of black smoke in front of them, which smoke came from the engine and completely obscured the train. The decedent applied the brakes and the car skidded. They passed through the smoke and saw a freight train moving slowly south, 20 or 25 feet ahead on the east track. About a second after emerging from the smoke the automobile struck the twenty-second car from the locomotive, and the decedent was injured and died immediately. The locomotive was then approximately 800 feet south of the crossing.

The exhibits disclose that the railroad is elevated somewhat above the level of the prairie at the point of the crossing and that the highway rises a few feet, apparently on an inclined grade on each side of the tracks.

The accident and the injury having occurred in Minnesota, the rights, duties and liabilities of the parties must be determined under the laws of that state. Duluth, W. & Pac. Ry. Co. v. Zuck, 8 Cir., 119 F.2d 74, 76; Champlin Refining Co. v. Walker, supra.

The legislature of Minnesota has provided that every railroad engineer shall ring the bell or sound the whistle at every road or street crossing on the same level as the tracks, except in cities. Mason's Minn. Stat.1927, § 10263. Section 4733 requires railroads to maintain signs at every public road crossing; and § 4743-2 provides that the Railroad and Warehouse Commission shall adopt and prescribe uniform warning signs for use at grade crossings.

The Supreme Court of Minnesota has declared that statutory signals for trains approaching a highway crossing are solely for the benefit of travelers on the highway; that they are immaterial when and where the train is actually upon and occupying the crossing when the traveler arrives; and that signals and warnings are not required for the purpose of preventing automobile drivers from running into the sides of trains. For drivers whose cars are properly equipped with lights and who exercise ordinary care a train upon a crossing is itself effective and adequate warning, whether the train is moving or standing still. Crosby v. Great Northern Ry. Co., 187 Minn. 263, 245 N.W. 31; Ausen v. Minneapolis, St. P. & S. S. M. Ry. Co., 193 Minn. 316, 258 N.W. 511; Sullivan v. Boone, 205 Minn. 437, 286 N.W. 350, 352.

The Supreme Court of Minnesota has also held that when the facts and circumstances are so unusual and hazardous as to render a crossing an exceptional or an unusually dangerous one requiring precautions in addition to those prescribed by law it is for a jury to say whether the railroad company has taken precautions commensurate with the existing conditions. Licha v. Northern Pac. Ry. Co., 201 Minn. 427, 276 N.W. 813; Crosby v. Great Northern Ry. Co., supra; Massmann v. Great Northern Ry. Co.. 204 Minn. 170, 282 N.W. 815; Willet v. Great Northern Ry. Co., 154 Minn. 10, 191 N.W. 260; Munkel v. Chicago, M.. St. P. & P. R. Co., 202 Minn. 264, 278 N W. 41.

On the issue of the alleged negligence of the defendant, the plaintiff contends that the evidence was sufficient to require the submission of the case to the jury in that (1) (a) no statutory signals were given, that is, neither the bell was rung nor the whistle sounded, and (b) there were no "stop" or other warning signs along the highway east of the crossing, as prescribed by the commission; and (2) that two unusual circumstances, namely (a) the smoke emanating from the engine and (b) the incline in the highway east of the tracks, required the defendant to give some warning of the presence of the train on the crossing, in addition to the statutory signals.

Tested by the decisions of the Supreme Court of Minnesota, these contentions are without merit. Since defendant's train was actually upon and occupying the crossing when plaintiff's decedent arrived the statutory signals are immaterial. The train itself was effective and adequate warning. Crosby v. Great Northern Ry. Co., supra. The burden was upon the plaintiff to prove negligence, and Campbell, the single witness to surrounding conditions, testified only that he did not hear a whistle or a bell and that he did not see any warning signs along the highway. He did not testify that he looked for, or from his position in the car could have seen, signs had they been present. His testimony was that as they approached the crossing the occupants of the car were all "looking right straight ahead" and that the windows of the car were closed. Such negative evidence is without probative value. It does not establish prima facie that the statute was not complied with and that warning signs were not present. Such evidence is insufficient to support a finding of negligence. Cotton v. Willmar & S. F. Ry. Co., 99 Minn. 366, 109 N.W. 835, 837, 8 L.R.A.,N.S., 643, 116 Am.St.Rep. 422, 9 Ann.Cas. 935; Krause v. Chicago, St. P., M. & O. Ry. Co., 207 Minn. 175, 290 N.W. 294.

To prove defendant's negligence plaintiff relies principally upon the doctrine of the existence of exceptional conditions at the crossing calling for precautions on the part of the railroad company in addition to the statutory signals. The duty of the railroad company to the public under this doctrine is a common-law duty governed by the principles of the common law. The exceptional condition making the doctrine applicable must be one known to the railroad company, or one which had existed for such length of time that the company in the exercise of ordinary care should have known that the crossing was unusually dangerous. The alleged circumstances relied upon in the present case consist of the smoke emanating from the engine mingled with the darkness of the night and the incline in the highway east of the tracks.

These facts alone do not bring the case within the rule of the Licha and other cases cited supra and relied upon by the plaintiff. In all those cases involving smoke and darkness or the relative grade of the highway to the railroad tracks, it is held that to amount to an "exceptional" condition smoke must be combined with fog or mist which frequently occurs at the particular crossing; with some act of the rail-

road company; or with some "unusual" situation in the surrounding topography creating the hazard and rendering the crossing dangerous. Neither smoke nor darkness nor inclined grades at crossings are unusual in any sense. Unconnected with some "exceptional" circumstances none of them requires precautions in addition to those required by statutory law.

In the Licha case the crossing was within the city of Saint Paul, and the accident occurred shortly after 3 o'clock in the morning. The fog was of such density that the light from the lamps on the automobile was unable to pierce it. The railroad tracks lay in a deep valley into which the street descends from an elevation so that the lights of an approaching automobile do not shine on a train if there be one on the crossing. No such condition prevailed in the present case. Here the crossing was in the open country. There was no fog or mist. There was no evidence of a deep hollow or other condition to prevent the lights on the automobile from shining on the train and the smoke from the engine.

Neither is this case like the Munkel case, supra, relied upon by the plaintiff. In that case the engine was standing on the track with the headlight extinguished emitting steam and smoke which combined with the natural fog and mist to obscure the train.

In the case of Duluth, W. & Pac. Ry. Co. v. Zuck, 8 Cir., 119 F.2d 74, the accident which was the cause of the controversy occurred at a railroad crossing in the country in the state of Minnesota, when an automobile collided with a freight train in the night time. The situation was unlike that in the present case, in that the crossing was surrounded with low, swampy peat land where pockets of fog would accumulate three and four nights a week in the spring of the year with such density that visibility was limited to 10 or 15 feet. It was also shown that this exceptional condition had existed for a long time; that there were signs and signals in general use which had they been installed at the crossing would have warned a traveler on the highway when a train was on the crossing

in time to enable him to avoid a collision. Under these circumstances on the authority of the Minnesota cases relied on by the plaintiff here it was held that the case was properly submitted to the jury. Compare, also, Sullivan v. Boone, supra.

There is no evidence of any unusual or exceptional conditions at the crossing involved in this case. The district court did not err, therefore, in holding that the plaintiff failed to sustain the burden of proof on the issue of the alleged negligence of the defendant.

Having reached the conclusion that the plaintiff failed to make a prima facie case on the charge of negligence, it is unnecessary to consider the issue of contributory negligence. However, we agree with the district court that the record here establishes want of ordinary care on the part of the decedent proximately contributing to the accident. "The rule" in Minnesota "is that a plaintiff's negligence is sufficient to bar a recovery, if it proximately contributes to the result." Olson v. Duluth, M. & I. R. Ry. Co., 213 Minn. 106, 5 N.W.2d 492, 495. The accident in this instance occurred on a dark night, making it the duty of the decedent to exercise care commensurate with the hazards to which such darkness exposed him. The lights on his automobile enabled him to see 100 feet or more ahead of the car. At the speed at which he was traveling he could have stopped within about 60 feet. The smoke, which was obvious, constituted an additional hazard requiring additional caution on his part. If he were looking "straight ahead", as Campbell testified, he could and should have seen the smoke in time to apply the brakes and avoid a collision. Compare Olson v. Duluth, M. & I. R. Ry. Co., supra, and Wessman v. Scandrett et al., Trustees, Minn., 14 N.W.2d 445. Clearly the driver's failure to exercise ordinary care by observing the conditions confronting him and within his view and by reducing the speed of his car in time to have avoided running into the train was negligence contributing to the injury complained of.

The judgment appealed from is affirmed.