CHICAGO, M., ST. P. & P. R. CO.
v. SLOWIK.
No. 14142.

United States Court of Appeals
Eighth Circuit.

Nov. 1, 1950.

Rehearing Denied Dec. 4, 1950.

action to recover damages for personal injuries received by plaintiff while a passenger in a 1929 Model A Ford owned and driven by his brother. The injuries resulted from a collision between the automobile and a slow-moving railroad tank car at a railroad crossing in the City of Minneapolis. The tank car constituted part of a train consisting of a Diesel switch engine, a tank car and a box car, which defendant was moving over a spur track as it intersected Third Avenue in the City of Minneapolis. The collision occurred about 1:00 o'clock a. m., January 3, 1949. Third Avenue extends in a general northerly and southerly direction, while defendant's spur track extends in a general easterly and westerly direction, and the avenue intersects the railroad track near the middle of a block.

On the night in question plaintiff's brother, Henry Slowik, took him to the home of a friend at about 8:00 o'clock p. m., where plaintiff and his friend played cards and partook of what they called a snack, consisting of sandwiches and beer, between 9:00 and 10:00 o'clock p. m. About 12:30 o'clock a. m., Henry Slowik called for plaintiff for the purpose of taking him home. The streets were somewhat slippery. The night was clear. The automobile lights were on and the brakes were in good condition. Plaintiff was sitting in the front seat, to the right of the driver. The window on his side was closed except for an inch from the top. The other windows were closed and all the windows were clear. They went over the Third Avenue Bridge which crosses the river on a slight curve and this highway extends in a straight line toward the crossing for at least 200 feet. As they approached the railway crossing they were going at a speed of from 15 to 20 miles an hour. Plaintiff and his brother were both familiar with the crossing, plaintiff having passed over it many times before the accident. He was looking out the window to his right and continued so to do until within 15 or 20 feet from the crossing. He heard no bell or warning of any sort from the train though he was paying attention and observed the Janney-Semple-Hill Building,

S. W. Rider, Jr., Minneapolis, Minn. (A. C. Erdall and C. O. Newcomb, Minneapolis, Minn., on the brief), for appellant.

Irvin E. Schermer, Minneapolis, Minn. (Charles T. Hvass, Jr., Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS, Circuit Judge, and DEWEY, District Judge.

GARDNER, Chief Judge.

This appeal is from a judgment for the plaintiff entered on verdict of a jury in an

a five or six story building which adjoins the railroad track and lies west of Third Avenue, and noticed that it had no lights as they passed it. He continued looking out the window to the right without turning his eyes toward the front until the driver called, "What is that?" Plaintiff then saw an object on the crossing about 25 or 30 feet away and he realized that the automobile was skidding, and then it crashed into the train. Plaintiff was injured in the collision and was removed to General Hospital for treatment.

It was the contention of plaintiff that defendant was negligent in that it failed to have warning signs at the crossing in question and failed to sound signals or display lights to give warning of the presence of the train on the crossing, which negligence he alleged as the proximate cause of his injuries.

The train, which at the time of the collision was moving slowly eastward over the crossing, was engaged in a switching movement. The Diesel switch engine with a tank car coupled to its rear or west end, moved westerly over this crossing so that the engine and tank car cleared the crossing to the west and there picked up a box car. As the cars passed west over the crossing a switchman had a lighted flare or fusee in his hand, together with a lighted lantern with which he flagged the crossing, and was standing in the middle of the crossing immediately before the equipment passed west over it. After picking up the cars on the west side of the crossing, the engine on signal proceeded east with the headlight on at the head or east end of the engine, and there were other lights on the head end of the engine consisting of one white marker and a light along the steps of the Diesel engine. In addition to these lights there was a dimmed headlight at the rear of the engine throwing its light upon the top part of the tank car. After picking up the box car, the engine with two cars attached proceeded east over the crossing. Preceding the engine and flagging the crossing, the switchman held the fusee and the lighted lantern as the train proceeded slowly eastward over the crossing. The crossing was further lighted by an arc light above the crossing, located 27 feet above the surface of the street and 9 feet south of the crossing. The effect of this light was to make it very easy to see the Diesel switch engine and the tank car as it illuminated the cars. A police officer shortly following the accident went to this crossing while the arc light was still on and he testified that he had no trouble seeing the entire space occupied at the Third Avenue crossing. The street was 64 feet in width from curb to curb and the distance between the buildings on the west side of the street and those on the east side of the street was 80 feet. It was stipulated by defendant that there was no railroad crossing sign maintained at this crossing. The railroad track served only the Janney-Semple-Hill industry and extended only between 200 and 300 feet westerly from the west side of the crossing in question. It was used infrequently and only during the night, after midnight. Third Avenue approaches the crossing on a uniform grade of 2.4%. There is no dip at the crossing, nor before it is reached.

Because of the slippery condition of the streets plaintiff told his brother Henry to take it easy and Henry answered, "Yes, I am. Don't worry about it." The weather was cold and the visibility was very good. On account of the slippery condition of the street the automobile in which plaintiff was riding skidded for some distance prior to crashing into the tank car. The automobile struck the center of the tank car. This car was nearly 32 feet in length. Henry Slowik, the driver of the car, was not called as a witness by plaintiff, nor was his absence explained. Other facts will be developed in the course of this opinion.

It was the claim of the defendant that the negligence of Henry Slowik, the driver, was the sole cause of the accident, and that plaintiff was himself guilty of contributory negligence. At the close of plaintiff's evidence and again at the close of the entire case, defendant moved for a directed verdict, which motion was denied, and the case was submitted to the jury on instructions to which defendant saved certain exceptions. The jury returned a general verdict in favor of the plaintiff, fixing his damages

at $4,250. Defendant moved for judgment notwithstanding the verdict, or in the alternative for a new trial. The motion was denied. Judgment was entered on the verdict and this appeal followed.

Defendant seeks reversal on substantially the following grounds: (1) The court erred in denying defendant's motion for a directed verdict because (a) plaintiff failed to prove that defendant was negligent and if negligent that such negligence was the proximate cause of plaintiff's injuries; (b) plaintiff himself was guilty of contributory negligence as a matter of law; (c) the accident was solely caused by the driver's negligence in itself or in conjunction with another independent intervening cause. (2) The court erred in refusing to give certain instructions requested by the defendant and in giving certain instructions excepted to by the defendant.

■ The jury having found the issues in favor of the plaintiff we must take that view of the evidence most favorable to him and we must assume that the jury found in his favor all facts which the evidence reasonably tended to prove. The applicable law is that of Minnesota. The Railway Company, while not an insurer of the safety of its crossings as a thoroughfare for the traveling public, owes a duty to exercise ordinary care in this regard, and in the exercise of its police power the State may prescribe regulations designed to prevent injuries at railroad crossings. By the statutes of Minnesota, M.S.A. § 219.06, railroads are required to maintain proper signs indicating the presence of their tracks which may intersect public highways, and failure to comply with this statute is negligence as a matter of law. The purpose of the crossing signs is to give warning of the presence of a railroad crossing. It was conceded by the defendant that it had not maintained the customary permanent sawbuck crossing signs at this crossing. This being an admission of negligence, it remained for plaintiff to prove that this negligence was the proximate cause of his injuries as there was no presumption that the negligence of the defendant in this regard was the proximate cause.

It was urged during the trial and the contention is here renewed, that this crossing was an extra hazardous one which required protection beyond that provided by the maintenance of the statutory crossing signs indicating the presence of the railroad tracks, and we shall first address our attention to that issue.

■ It will be observed that plaintiff did not in his complaint charge that this crossing was an extra hazardous one, but it is claimed that the evidence of physical facts was such as to make that an issue and the trial court apparently so regarded it. We have recited the facts in this regard and we think there is no substantial evidence which would warrant a finding that the crossing was an extra hazardous one. There is no claim of fog, curve or sharp changes in the immediate approach to the crossing, no fog mixed with steam, nor in fact any peculiar or unusual facts making the crossing exceptionally hazardous. Rhine v. Duluth M. & I. Ry. Co., 210 Minn. 281, 297 N.W. 852; Sullivan v. Boone, 205 Minn. 437, 286 N.W. 350; Ausen v. Minneapolis, St. P. & S. S. M. Ry. Co., 193 Minn. 316, 258 N.W. 511; Blaske v. Northern Pac. Ry. Co., 228 Minn. 444, 37 N.W.2d 758; Licha v. Northern Pac. Ry. Co., 201 Minn. 427, 276 N.W. 813; Duluth, W. & Pac. Ry. Co. v. Zuck, 8 Cir., 119 F.2d 74; Flagg v. Chicago, Great Western Ry. Co., 8 Cir., 143 F.2d 90, 94. As said by us in the recent case of Flagg v. Chicago Great Western Ry. Co., supra, arising under the laws of Minnesota: "Neither smoke nor darkness nor inclined grades at crossings are unusual in any sense."

The track was a spur track used infrequently and at night only. There was permanently an arc light lighting the crossing. The grade decline here was gentle and regular, and the light from the headlights on the automobile as it passed along this street would as a matter of physics be reflected in a plane parallel with the surface of this declining grade in the same manner as if the grade had been a perfectly horizontal one.

■ The presence of a railroad train or cars on a crossing is notice to the driver

of a vehicle of such obstruction to the highway, without lights or other signals to disclose its presence. The mere presence of the car or train, while a condition, is not necessarily the effective cause of the injuries resulting from collision with the train. Generally speaking, the railroad company and those in charge of its trains have the right to assume that persons traveling by automobile at night will adopt such lights and drive at such rate of speed as will enable them to see a train of cars at a public crossing and to bring the automobile to a stop before coming in collision with the cars. Mlenek v. Fleming, 224 Minn. 38, 27 N.W.2d 800. In the instant case the court instructed the jury that the presence of the train on the crossing was the best evidence and warning of danger to drivers approaching the crossing on the highway. The court also instructed that if the driver of the automobile failed to give heed to the warning by the presence of the train on the crossing and this failure was the sole proximate cause of the accident, the plaintiff could not recover regardless of the fact that defendant was guilty of negligence in not having installed permanent crossing signs. The court also instructed the jury that if they found the train was occupying the crossing, (and the evidence is without dispute that it was), when the automobile approached the crossing, then the train itself was adequate warning of the presence of the track and the train thereon. Accepting this as a proper statement of the applicable law, and we think it is, then under the undisputed evidence we think there was no substantial evidence to sustain the verdict of the jury.

By statute in Minnesota, M.S.A. § 169.60, it is provided that there shall be an uppermost distribution of light by the headlights of automobiles, so aimed and of such intensity as to reveal persons and vehicles a distance of at least 350 feet ahead, and that the lower distribution of light shall be so aimed and of sufficient intensity to reveal a person or vehicle at a distance of 100 feet ahead. The lower distribution would be what we commonly refer to as being on dim. Under Minnesota law, M.S.A. § 169.14, a driver must so operate

an automobile that he is able to bring it to a stop before striking an object within the distance illuminated by the headlights of his vehicle.

The burden of proof to establish that defendant's admitted negligence was the proximate cause of plaintiff's injuries was upon the plaintiff. In this case there was no evidence that the driver of this car looked for a crossing sign or was deceived by its absence. In fact, the driver of this car, who was the plaintiff's brother and available as a witness, was not called, nor was his absence excused or explained. The failure of plaintiff, under the circumstances disclosed, to call the driver warrants, if indeed it does not compel, the inference that his testimony would not have tended to establish plaintiff's contention, but that his testimony if presented would have been adverse to the plaintiff. Ætna Casualty & Surety Co. v. Reliable Auto Tire Co., 8 Cir., 58 F.2d 100; Goldie v. Cox, 8 Cir., 130 F.2d 695; Donnelly Garment Co. v. Dubinsky, 8 Cir., 154 F.2d 38; Futrell v. Arkansas-Missouri Power Corp., 8 Cir., 104 F.2d 752; Wesson v. United States, 8 Cir., 172 F.2d 931; State v. Engstrom, 226 Minn. 301, 32 N.W. 2d 553.

In the circumstances here disclosed there was certainly no presumption that the driver of this car was in the exercise of ordinary care. There was testimony that the lights on his car were in good condition. If on dim, he could have seen a person or a vehicle at a distance of 100 feet and it was his duty to so operate his automobile as to be able to bring it to a stop before striking an object within the distance illuminated by the headlights of his car. Under the undisputed evidence this the driver did not do. In Mlenek v. Fleming, supra [224 Minn. 32, 27 N.W.2d 805], in which a verdict for plaintiff was reversed because of the contributory negligence of the plaintiff, the court among other things said: "It is obvious from plaintiff's testimony that under the conditions that confronted him just prior to the collision, approaching a railroad crossing he was familiar with, that he was driving his car at a rate of speed greater than would per-

mit him to bring it to a stop within the range of his own vision. It is true that he testified that as he approached the crossing he looked for a train and even opened the window of his car, but did not see the train until he was about 20 feet away. He seems to have taken what he regarded as the necessary precautions as he approached the crossing. However, under the rulings of this court, it would be necessary for him to keep his car under such control as to permit him to bring it to a stop within the distance illuminated by his lights."

We can not escape the conclusion that the negligence of the defendant in failing to maintain permanent crossing signs was not the proximate cause but merely a condition of the accident and that the negligence of the driver of the automobile was the sole cause of plaintiff's injuries. Having reached this conclusion, we find it unnecessary to consider whether or not plaintiff himself was guilty of contributory negligence, nor need we consider whether or not the court erred in giving or refusing to give instructions. The defendant was entitled to a directed verdict and that having been refused, he was entitled to judgment notwithstanding the verdict. The judgment appealed from is therefore reversed with directions to enter judgment dismissing the action.