## GEORGE D. OLSON v. DULUTH, MISSABE & IRON RANGE RAILWAY COMPANY.[1]

July 31, 1942.

No. 33,265.

[1]Reported in 5 N. W. (2d) 492.

*Dennis F. Donovan, Clarence J. Hartley,* and *Elmer F. Blu,* for appellant.

*Alfred J. Weinberg,* for respondent.

JULIUS J. OLSON, JUSTICE.

In this, a negligence action, the accident occurring at a place where two highways cross, bisected by defendant's single-track railway, plaintiff, driving his father's car, collided with one of defendant's ore trains by smashing into its 13th car from the rear end, the train being in motion and headed northerly. There was a verdict for plaintiff for $5,300. Defendant appeals from an order denying its alternative motion for judgment or new trial.

During the evening of May 7, 1940, plaintiff, then nearly 20 years of age, accompanied by his young friend Walter Kilby, Jr., drove his father's Terraplane car on a trip to Proctor from his home at Duluth, the purpose of the visit on his part being to say "goodbye" to some of his friends, as he contemplated leaving the next day for California to attend an aviation technology school. He was a senior in high school, and the record discloses that he was a mentally capable and physically fit young man. He was particularly interested in things mechanical, hence his desire to attend the aviation school. Leaving Duluth, the night being dark and cold, all the windows were closed and the heater was used to some extent so as to make the inside of the car comfortable. Calling at Proctor and not finding the persons whom he desired to see, he concluded to drive to Cloquet to visit a relative. Traveling

on state highway No. 2 until he arrived at Adolph Junction, he chose to take highway No. 13 (referred to in the record as "Midway road"), being of the opinion that this ultimately would join state highway No. 61, which he knew led to Cloquet. He had never traveled over Midway before. At Adolph he turned due south upon Midway, a broad, hard-surfaced, black-top road. In doing so he there crossed defendant's line of railway which runs southwesterly and northeasterly. Defendant's railway also crosses Midway and state highway No. 57 (referred to as the "St. Louis River road") where they meet, some three miles south of the junction. That road runs due east and west, so the two highways cross at right angles.

The crossing is in a terrain which is practically level and open over a distance of some 900 feet to a driver approaching it from the north, as was plaintiff, the average grade being 1.9 per cent. To the driver's right there was, as properly characterized by defendant, "a parade of signs warning of danger." First, there was the usual state highway "crossroad" sign 500 feet from the crossing; next, the usual circular disk sign, "R. R." in large black letters with the significant black cross on a light background, 450 feet from the junction; then came the "Junction 57" sign, followed by the standard railroad sawbuck sign about 100 feet from the junction, the latter supported by a pole painted in black and white stripes. All signs except the sawbuck were prepared, installed, and maintained by the state highway department, as defendant had no jurisdiction or control over them. These signs were all within 16 or 17 feet from the side of the tarvia upon which plaintiff was traveling.

The collision occurred at the junction above described shortly after nine o'clock that evening, plaintiff running into defendant's ore train, consisting of 56 cars, a locomotive, and caboose, which was moving northerly with empty cars toward the mining area. The cars are about 10.5 feet in height and 19 to 20 feet in length. The railroad's whistling post was located 1,452 feet south of the junction. It is established beyond question that the statutory

crossing signals were given. As a matter of fact, the court instructed the jury that "plaintiff does not claim that the defendant was negligent in the operation of the train," that it had "a perfect right to operate its train as it did," and that it had "the right of way." There is no claim that defendant violated any statutory or official requirement in respect to signs. Plaintiff's theory, adopted by the court as a proper jury issue, was that the crossing was an unusually dangerous one due to fogs often settling in that locality and that, as such, additional warning signs should have been installed or other means adopted to safeguard public travel.

Some further facts should be stated with respect to plaintiff's claims. He testified that as he came over the crest of a small hill about 1,000 feet north of the junction "it started to get a little sort of misty and foggy like," and as he proceeded "it got more foggy." "When we got in the thickest part of it I think it was only about 30 feet I could see ahead." From Adolph on he traveled "maybe 35 and sometimes maybe less" miles per hour. As he got into the fog he "slowed it down * * * just a little." His friend testified that the speed was about 30 miles up to the time of the collision. Plaintiff saw none of the highway signs, heard no whistle or other warning or noise of the rattling ore cars and locomotive. Only when within 25 to 30 feet of the ore train did his lights reveal its presence. He admitted that at the rate of speed he was going he could not avoid colliding with the train. He testified that he then swung to his right and applied the brakes, but struck, as we have seen, the 13th car from the end, demolishing his machine. Both he and his friend received very serious injuries. As a matter of fact, plaintiff's special damages, not disputed at the trial, amounted to $2,500.90, so in view of the extent and permanency of his injuries it is fairly apparent that the jury compromised between liability and damages.

Plaintiff's exhibits A, E, and K have been found most helpful. Exhibit A is a map drawn to scale showing the locations and distances of the various objects pertaining to the involved terrain.

The distance from defendant's sawbuck sign to the railroad track is between 90 and 95 feet. Before reaching the track plaintiff had to cross the river road (No. 57), so that if a farmer's team and wagon had entered upon the intersection immediately ahead of him, at the speed plaintiff was traveling and in the dense fog there prevailing, as claimed by him, a collision would as likely have followed as his collision with defendant's train. If there was no fog and if the visibility was as normal as claimed by defendant, then his failure to see what was obvious to any reasonably careful person would convict him of contributory negligence as a matter of law. Either horn of the dilemma defeats his cause. Exhibits E and K, taken shortly after the accident, portray clearly that along and on both sides of the highway there were wire fences, wooden posts being used. Close to the fence line on his right are found high poles supporting electric current wires. Also confronting the driver were the telegraph poles and wires commonly found along railway tracks. There was a clear white strip painted in the middle of the tarvia surface. This plaintiff said he observed, but nothing else.

In considering plaintiff's contributory negligence the trial judge said that it was a matter presenting "a close question." Reviewing the cases which he deemed applicable to the facts, such as Heiden v. Minneapolis St. Ry. Co. 154 Minn. 102, 191 N. W. 254; Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630; Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42; Tully v. Flour City C. & O. Co. 191 Minn. 84, 253 N. W. 22; and Twa v. Northland Greyhound Lines, Inc. 201 Minn. 234, 275 N. W. 846, it was his conclusion that in view of the heavy fog and the lack of a reflector sign near the railroad track the situation was such that plaintiff's contributory negligence was one upon which "reasonable minds might differ" and therefore presented a jury question. He was of the opinion that the "drive within your light" rule is not an arbitrary one, "or should not be so."

■ There are two necessary elements in contributory negligence, the first being (Eichhorn v. Lundin, 172 Minn. 591, 595, 216 N. W.

537, 538) "want of ordinary care," and the next, "a causal connection between plaintiff's conduct and the accident. The rule is that a plaintiff's negligence is sufficient to bar a recovery if it proximately contributes to the result." Our cases are cited in 4 Dunnell, Dig. & Supp. § 7012.

■ The question is whether contributory negligence appears here as a matter of law.

It is contended that the fog was a distracting circumstance. Distracting from what? What does it draw the driver's attention away from or to? It was a warning of the most forceful and potent character directing the driver's attention to the necessity resting upon him to drive carefully and slowly enough to admit of stopping to avoid striking any object which might reasonably be expected to be upon the highway. Other roads intersect highways. Railroads intersect highways at grade. People travel such intersecting roads. Trains move across such grade crossings, having the right of way, as the court charged. Other vehicles might be traveling on the same highway at slow speed. Plaintiff was charged with that knowledge and nevertheless drove at a speed which prevented him from stopping in time to avoid a collision. If the fog was as thick as he claims, the duty devolved upon him to exercise care commensurate with the extreme hazard to which it exposed him.

The case is different in its facts from Munkel v. C. M. St. P. & P. R. Co. 202 Minn. 264, 278 N. W. 41, upon which plaintiff heavily relies. In the first place, that action was brought by a passenger, not the driver of the car; secondly, defendant's engine was left upon a passing track emitting a great deal of smoke and steam which mingled with the natural fog and mist surrounding the crossing. Then, too, that was a crossing "at the outskirts" of the village where there were "parallel tracks, * * * one for passing and a main track" crossing the highway. Here we have an open country crossing. Nor is this case like that of Licha v. N. P. Ry. Co. 201 Minn. 427, 276 N. W. 813, where plaintiff was also a guest passenger in the car colliding with defendant's train. That

crossing was within the city of St. Paul, and the accident occurred shortly after three o'clock in the morning. The street was down-hill, and defendant's tracks were so located that the light from the car in which plaintiff was riding would not disclose the pres-ence of the train in time for a careful driver to stop. There an electric light at the intersection, maintained by the city, was ex-tinguished at 2:30 o'clock a. m. In that situation we said (201 Minn. 429, 276 N. W. 814):

"The driver could not see the [stop sign] post by reason of its location and the darkness and fog with which it was surrounded, nor the train and tracks by reason of the grade of Maryland street descending to within a short distance of the tracks, the rise just before reaching the tracks."

There are numerous cases from other jurisdictions as to the duties resting upon drivers of vehicles under foggy or misty weather conditions. We shall refer to only a few which we think are of aid to the solution of our problem. Thus, in O'Rourke v. McConaughey (La. App.) 157 So. 598, 606, the court held that "if fog constitutes 'the greatest menace of transportation whether upon land or sea,' it likewise imposes the burden of most extra-ordinary and unusual care upon the operator of a vessel or vehicle navigating or traveling through the fog." Of similar import are: Galliano v. East Penn Elec. Co. 303 Pa. 498, 503, 154 A. 805, 807; Cormican v. Menke, 306 Pa. 156, 159 A. 36; Russell v. Szczawinski, 268 Mich. 112, 255 N. W. 731; Leonard v. Bottomley, 210 Wis. 411, 245 N. W. 849; B. & O. R. Co. v. Fidelity Storage Co. 55 App. D. C. 92, 2 F. (2d) 310, 312; McFadden v. N. P. Ry. Co. 157 Wash. 437, 289 P. 1.

Applying to plaintiff's conduct in the case at bar the standard of care required of the reasonably prudent person, we think that, as a matter of law, he was guilty of contributory negligence and for that reason cannot recover.

We see no merit in the contention made for the first time in the dissent that the power of the court to pass upon the compelling force of the evidence in an appropriate case is extinguished be-

cause the traffic act which forbids unreasonable speeds and requires speed to be so restricted as to avoid collisions makes a violation of its provisions *prima facie* evidence of negligence only instead of conclusive evidence thereof.

Without any statutory rules, the general rules of negligence would apply and did apply before we had a traffic code. We then had a few simple rules by statute such as G. S. 1866, c. XIV, which provided that we should turn to the right in meeting and to the left in passing. No one would contend that these rules comprised a complete code of conduct on the highway. Came the motor vehicle and the traffic codes—at first simple and later more complicated but still underlaid by the general rules of ordinary care. With the statute as it was before the 1939 amendment, a contributing violation made a conclusive case against the violator. The statute made certain misconduct negligence, which according to circumstances may or may not have been such at common law. Since the 1939 amendment such statutory misconduct is *prima facie* evidence of negligence only. The *prima facie* provision is still a rule against the violator, not in his favor. It is a sword in the hands of his opponent, not a shield on his own arm. If the evidence of violation stands unopposed by evidence tending to show a reasonable ground for such violation, the court should direct a verdict against the violator. Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409. The defendant having proved only a violation of the statute connected as cause with the injury, and no more, shifted to plaintiff the burden of the evidence, as distinguished from the burden of proof. The burden on the plaintiff would then be to at least counterbalance the *prima facie* case made by the showing of violation. Topinka v. Minnesota Mut. L. Ins. Co. 189 Minn. 75, 248 N. W. 660.

In the case at bar, not only was there a statutory violation by plaintiff, but his own evidence reinforced the *prima facie* case so made and, standing alone, made out a conclusive case against him.

Properly interpreted, the language of the statute evinced an intention only to relieve the violator of the conclusive force of his

violation and permit him to rebut it. To that extent only did the legislature intend to change the existing effect of the violation. To interpret into the language a purpose to make the jury judges of the law as well as the facts is beyond the scope of the language. Had the legislature had any such intent it would have voiced its purpose in other words, and another problem would have been presented.

The Oklahoma and Arizona cases cited in the dissent are based upon constitutional provisions in those states making the defenses of contributory negligence and assumption of the risk questions of fact to be left to the jury, a very different provision and one made by the constitutions, not the legislatures, of those states.

■ In his brief plaintiff claims that "the salient point" in his case is that he "was confronted with a sudden and unexpected emergency" when he first discovered the presence of the train. This emergency was created, so he claims, because inadequate signs "may have lulled him into a feeling of safety." We are not impressed with that claim. It was not tried upon any such theory, and no such issue was submitted to the jury. Furthermore, the emergency rule is inapplicable "unless it be first determined that there existed a real peril to which the party seeking its protection did not contribute by his own want of care. * * * Even there, it does not excuse negligence. The rule is but a special application of the general requirement of that degree of care which the circumstances would have dictated to ordinary prudence." Nicholas v. Minnesota Milk Co. 212 Minn. 333, 335, 4 N. W. (2d) 84, 85. In plaintiff's case, if there was any emergency it was clearly of his own making by failing to exercise the degree of care required of him as a matter of law.

■ Nor is plaintiff correct in his assertion that the reasonableness of the speed at which he was driving should be determined by "the condition of the highway *apparent* to" him. That is not the test. Rather, "the standard of conduct required by the law is objective rather than subjective." Consequently, "it is immaterial that a person charged with negligence thought that he was acting

carefully or exercised his best judgment. *The legal standard of conduct is not the opinion of the individual, but the conduct of an ordinarily prudent man under the circumstances."* (Italics supplied.) 4 Dunnell, Dig. § 6970, and cases under notes 87 and 88.

Order reversed with direction to enter judgment for defendant.

MR. JUSTICE STONE concurs in the result.

PETERSON, JUSTICE (dissenting).

The evidence shows that plaintiff was unfamiliar with the locale. Just prior to the accident he drove at a moderate rate of speed of 25 to 30 miles per hour. After passing over the brow of a hill he descended into a low area, in which there was a pocket of heavy fog, just before reaching defendant's tracks. He says that he slowed down. He also testified positively, and there was no evidence to contradict him except inferences which might have been drawn contrary thereto from other evidence, that he was able to stop within the range of vision afforded by his lights. The reason which he gave for not stopping sooner was that he was surprised to see the train crossing the road in front of him through the fog and that it required about a second or so to realize the danger which confronted him. He immediately applied his brakes and turned to his right to avoid a collision. Under such circumstances, whether he was guilty of contributory negligence was a fact question.

1. Of course, contributory negligence is the failure on plaintiff's part to exercise due care for his own safety. If, as plaintiff claims, he could stop within the range of vision afforded by his lights, he was not guilty of contributory negligence. It was for the jury to determine whether that claim was true.

2. The rule that a driver of an automobile must drive at such a speed that he can stop within the range of his lights is not a hard and fast one. The rule was first announced in a case where the atmospheric conditions were clear and favorable to full and unobstructed view. Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42. We held that where the driver's view was obstructed by atmospheric conditions such as snow and wind the rule was not

applicable. Tully v. Flour City C. & O. Co. 191 Minn. 84, 253 N. W. 22. Other courts have adopted the same view. Morehouse v. City of Everett, 141 Wash. 399, 252 P. 157, 58 A. L. R. 1482 (fog); Devoto v. United A. T. Co. 128 Wash. 604, 223 P. 1050 (fog).

The rights of a railroad and the traveling public to the use of a highway at a grade crossing are reciprocal. Where the decedent crossed railroad tracks in front of an approaching train which he did not see because of "distracting circumstances," consisting of a dark and cloudy day with occasional snow flurries and smoke and steam emitted from a locomotive on a switching track and carried toward him by the wind, contributory negligence was held to be a fact question in Lawler v. M. St. P. & S. S. M. Ry. Co. 129 Minn. 506, 152 N. W. 882. Numerous cases involving similar situations are cited in Licha v. N. P. Ry. Co. 201 Minn. 427, 276 N. W. 813. Rintala v. D. W. & P. Ry. Co. 159 Minn. 499, 199 N. W. 562, is not in point. There atmospheric conditions were clear and plaintiff had a clear and unobstructed view of the crossing, with which he was familiar, for a distance of over 500 feet.

3. Statutory provisions governing the rights and duties of motorists at railroad crossings control decision in such cases. Cleveland, C. C. & St. L. Ry. Co. v. Gillespie, 96 Ind. App. 535, 173 N. E. 708.

The question of contributory negligence in the instant case is controlled by the highway traffic regulation act, Mason St. 1940 Supp. §§ 2720-151 to 2720-294. Decision that plaintiff was guilty of contributory negligence as a matter of law is predicated upon a finding of fact here as a matter of law contrary to the finding of fact by the jury upon the trial. The finding here is based upon evidence that plaintiff was driving at so high a rate of speed that he could not stop within the range of his lights. The highway traffic regulation act prescribes not only the permissible rate of speed and the degree of care required of drivers of automobiles, but the effect of a violation as being contributory negligence. The act provides that it shall be the duty of the driver of an automobile to drive at a speed not greater than is reasonable and

prudent under the conditions, having regard to the actual and potential hazards then existing, *Id.* § 2720-178(a), and to drive at an appropriate reduced rate of speed when approaching and crossing a railway grade crossing or *when special hazards exist by reason of weather conditions, Id.* § 2720-178(c).

Although the majority does not label plaintiff's conduct as constituting violations of the statute, it does hold that plaintiff's violations of the statute in the respects mentioned are contributory negligence as a matter of law. This the court has no right to do. *Id.* § 2720-291(b) provides that *in all civil actions* a violation of the highway traffic regulation act by any party shall not be negligence *per se,* but only *prima facie* evidence of negligence. Plainly, the statute makes contributory negligence in cases involving violations thereof a fact question for the jury, not one of law for the court. Fickling v. Nassif, 208 Minn. 538, 294 N. W. 848; Yien Tsiang v. Minneapolis St. Ry. Co. 213 Minn. 21, 4 N. W. (2d) 630.

By law the jury may be constituted the sole judge of the existence of contributory negligence and assumption of risk even in cases where, absent statute or constitutional provision, the court would hold that either or both defenses appear as a matter of law.

In C. R. I. & P. Ry. Co. v. Cole, 251 U. S. 54, 40 S. Ct. 68, 64 L. ed. 133, affirming Dickinson v. Cole, 74 Okl. 79, 177 P. 570, it appeared that plaintiff's intestate "stepped upon the railroad track when a train was approaching in full view and was killed." The constitution of Oklahoma provides that in all cases the defenses of contributory negligence and assumption of risk shall be questions of fact and left to the jury. The state court held that, absent the constitutional provision, the deceased was guilty of contributory negligence as a matter of law, but that under the constitution the question was one for the jury. Plaintiff had a verdict. In affirming, Mr. Justice Holmes speaking for the court said that the legislature "may confer larger powers upon a jury than those that generally prevail. Provisions making the jury judges of the law as well as of the facts in proceedings for libel are common to England and some of the States, and the con-

troversy with regard to their powers in matters of law more generally as illustrated in Sparf v. United States, 156 U. S. 51, 715, 15 S. Ct. 273, 39 L. ed. 343 [10 Am. Crim. Rep. 168], and Georgia v. Brailsford, 3 Dall. [Pa.] 1, 4, 1 L. ed. 483, 484, shows that the notion is not a novelty. In the present instance the plaintiff in error cannot complain that its chance to prevail upon a certain ground is diminished when the ground might have been altogether removed."

Following the Cole case, the Arizona court, in a case arising under a provision of the constitution of Arizona similar to that of Oklahoma, said:

"The language of the provision is plain and unambiguous, and to our minds clearly indicates that the power or duty to finally and conclusively settle the question of contributory negligence or assumption of risk is, by its terms, transferred from the court to the jury. If this is not the force and effect of the provision, we can conceive of no reason why the framers of the Constitution should have adopted the measure. *We think that the evident purpose and intent of the provision is to make the jury the sole arbiter of the existence or nonexistence of contributory negligence or assumption of risk in all actions for personal injuries.*" (Italics supplied.) Inspiration C. C. Co. v. Conwell, 21 Ariz. 480, 190 P. 88, 90. See Herron v. Southern P. Co. 283 U. S. 91, 51 S. Ct. 383, 75 L. ed. 857.

Section 2720-291(b) has the same effect as the constitutional provisions of Oklahoma and Arizona to which reference has been made. It constitutes the jury the sole arbiter to determine the existence or nonexistence of contributory negligence.

Where, as here, the statute explicitly provides that a violation of the statute shall be contributory negligence only if a jury says that it is, the court ought not to hold in a particular case that the act is contributory negligence as a matter of law where the jury has found that it is not contributory negligence as a matter of fact. It is for the legislature to prescribe the law and policy

of the state. It is for us to give effect to the legislative will where it has been as clearly manifested as it is here.

If there is anything to the contrary in any of our prior decisions, including Nicholas v. Minnesota Milk Co. 212 Minn. 333, 4 N. W. (2d) 84, we ought to arrest any tendency in that direction as being not only opposed to the free exercise of, but as an encroachment on, the power of the legislature to legislate on the question now before us. Why should the court want to perpetuate any rule of its own making as against the legislative action adopting and substituting a new and different rule? After all, what constitutes contributory negligence is in the last analysis a fact question. We may think that our judgment should prevail in a particular case; but if the legislature says that it should not we ought to abide by its will. "Judges have neither higher function, nor more pressing duty, than to ascertain and give full scope to declared legislative policy when within the competency of the enacting body." State ex rel. City of St. Paul v. M. St. P. & S. S. M. Ry. Co. 190 Minn. 162, 251 N. W. 275, 277.

GALLAGHER, CHIEF JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Peterson.