LaVONNE WESSMAN v. HENRY A. SCANDRETT AND OTHERS AS OPERATING TRUSTEES OF CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY.
ARTHUR WESSMAN v. SAME.[1]

May 5, 1944.

Nos. 33,688, 33,689.

[1]Reported in 14 N. W. (2d) 445.

*Lauerman & Pfeiffer,* for appellants.

*F. W. Root, C. O. Newcomb, A. C. Erdall,* and *L. D. Barnard,* for respondents.

LORING, CHIEF JUSTICE.

Plaintiffs appeal from orders denying their motions to vacate a dismissal of their actions made at the close of their case and to grant a new trial. The question presented by these appeals is

whether defendants were guilty of negligence in failing to provide warning signs at their railroad crossing at a point a mile west of Brownton in this state.

About 4:40 o'clock of the morning of October 30, 1942, the plaintiff Arthur Wessman and his daughter LaVonne, together with other passengers, were driving south on state aid highway No. 15 and, in a dense fog, struck the side of defendants' moving freight train at the grade crossing above referred to. Wessman was driving the car, and LaVonne was in the back seat. Both were injured in the collision and the automobile damaged. At this crossing there was a sawbuck sign on the south side of the railroad but none on the north side.

The railroad at this point runs east and west. Prior to the spring of 1942, state aid highway No. 15 crossed it at a point a mile east of Brownton, but was later rerouted so that on the morning of the accident it crossed the railroad a mile west of Brownton. The highway is practically level, and so is the railroad grade. The Wessmans were on their way to attend a funeral at Webb, Iowa. Wessman himself was not familiar with the crossing, having passed over it only once, and then after dark as a passenger in a car going in the opposite direction. He testified that he saw the disk highway-railroad-crossing sign and that he was aware that it was about 300 feet distant from the railroad; that he then occupied his mind with an endeavor to see the railroad sawbuck sign which he expected to find before he got to the track itself. LaVonne was in the back seat and did not see the highway sign, nor was she otherwise aware that they were approaching a railroad. Wessman testified that after passing the highway sign he slowed down but could not tell how much. In the fog his lights would not reveal an object 50 feet from his car. He did not see the passing freight train at all.

Inasmuch as Wessman was aware that a railroad crossed the highway at approximately 300 feet south of the highway sign, we are of the opinion that ordinary care on his part would have required more diligence than he displayed in approaching the crossing and that the trial court was right in dismissing his action. A

man of ordinary prudence would, as a matter of law, after seeing the highway sign, have realized that in approaching the crossing in such a dense fog he should proceed at a speed that would permit him to stop within the distance which was illuminated by his lights. Olson v. D. M. & I. R. Ry. Co. 213 Minn. 106, 5 N. W. (2d) 492.

▇▇▇ However, the negligence of her father could not be imputed to LaVonne, and if the negligence of defendants in failing to have the warning sign which the statute required or which ordinary prudence would require contributed to the injury to LaVonne she could recover. Setosky v. D. S. S. & A. Ry. Co. 173 Minn. 7, 216 N. W. 245.

Minn. St. 1941, § 219.18 (Mason St. 1927, § 4743-3), provides:

"At each grade crossing in this state hereafter established and at each grade crossing where and when the existing crossing signs are replaced the railway company operating the railroad thereat shall erect and maintain on the highway on each side of the railroad track or tracks and within a distance of 75 feet from the nearest rail, one or more of such uniform home crossing signs."

So far as this record shows, the crossing here involved was constructed early in 1942, and the failure of defendants to have a crossing sign on both sides of the track would be a violation of this statute and negligence *per se* on their part. Consequently, it was error for the trial court to dismiss LaVonne's suit.

■ On the oral argument the claim was made by defendants' counsel that a crossing existed at this point prior to the enactment of the quoted statute. So, in view of another trial, we think it should be said that upon this record there was a question for the jury as to whether ordinary care on the part of the defendants did not require another warning sign on the north side of the track for the protection of travelers approaching from that direction. This court takes judicial notice that fogs frequently occur, and collisions with moving trains during fog have occurred with sufficient frequency that men of ordinary prudence operating railroads should anticipate injury to someone from failure to have adequate warn-

ings, visible under such conditions, on both sides of a railroad crossing. At least this is a question for the jury. Any indication of a contrary view expressed in Rhine v. D. M. & I. R. Ry. Co. 210 Minn. 281, 297 N. W. 852, is overruled.

The order dismissing Arthur Wessman's case is affirmed; that dismissing LaVonne's is reversed and a new trial granted her.

JULIUS J. OLSON, JUSTICE (concurring in result in Arthur Wessman case; dissenting in LaVonne Wessman case).

The result reached in the Arthur Wessman case is clearly right. My dissent relates only to the daughter's case, which I think, for reasons now to be stated, should be affirmed.

To my mind, the facts recited in the majority opinion clearly demonstrate that the cause of the collision was wholly due to the automobile driver's negligence. The train was in motion at the crossing before and at the time the collision occurred. It was rightfully there and had the right of way. If there had been no fog, no one could reasonably claim that any liability could be fastened upon defendants, for the simple reason that the train itself would have constituted notice to the automobile driver that he could not go forward. The fog was not of defendants' making nor due to any fault on their part. It is not claimed, or even suggested, that there was any smoke or steam from the engine which added to the foggy condition of the atmosphere. The crossing was upon level ground in an open country. There was nothing about it that could possibly put it in the class of a hazardous crossing. Furthermore, Mr. Wessman, the driver, admitted that when he saw the metal sign (the standard railway crossing sign) he knew that 300 feet ahead there was a railroad crossing. He had then all the information that the locomotive headlight, the crossing whistle, and the sawbuck sign could give him. Yet he went ahead. The absence of the sawbuck sign so far as LaVonne was concerned had nothing to do with the accident. She was in the back seat and was wholly oblivious to what the driver was doing. If any other object had been at the crossing, such as a stalled truck, not placed there by defendants, and if Wessman's automobile had collided with it,

would the absence of a sawbuck sign, as to LaVonne, justify a negligence claim against defendants? Negligence here is not founded upon defendants' train occupying the crossing, but is based solely upon the absence of the sawbuck sign. What was the proximate cause of the accident—absence of the sign or Wessman's careless driving? To me it is plain that upon the driver of the car alone must be fastened the sole responsibility for the accident.

Both cases should be affirmed.

