## LEO MLENEK v. JOSEPH B. FLEMING AND ANOTHER AS TRUSTEES OF THE ESTATE OF THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY.[1]

May 23, 1947.

No. 34,394.

[1]Reported in 27 N. W. (2d) 800.

*O'Brien, Horn, Stringer, Seymour & O'Connor,* for appellants.
*Nelson, Nelson & Casey,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court of Steele county denying defendants' alternative motion for judgment or a new trial.

Plaintiff sued defendants as trustees of the estate of the Chicago, Rock Island and Pacific Railway Company, a corporation, to recover for personal injuries sustained by him and for damage to his automobile arising out of a collision with one of defendants' freight trains. Plaintiff claimed that defendants violated the statute by closing a public highway for traffic with their train for a longer period than ten minutes and by failing to perform the duties incumbent upon them resulting from unusual atmospheric conditions, which it was claimed created an extra hazard. Defendants denied any liability and alleged that the collision and resulting injuries and damage were caused by plaintiff's contributory negligence. At the close of the testimony, defendants moved the court for a directed verdict, which was denied. The jury returned a verdict for plaintiff.

Defendants assigned as error the court's denial of (a) their motion for a directed verdict; (b) their motion for judgment notwithstanding the verdict; and (c) their motion for new trial; and assigned as error various parts of the court's charge to the jury and the refusal of the court to give certain requested instructions.

The questions for consideration are:

(1) Did defendants violate a statute because of the length of time the train was stopped on the crossing, and, if so, were defendants' acts the proximate cause of plaintiff's damages?

(2) Were the atmospheric and other conditions such as to require extra care on the part of defendants to warn plaintiff, and was he guilty of contributory negligence?

■ Plaintiff had been visiting relatives in Faribault and was returning to his home about ten miles east of Medford. The accident occurred about 3:30 in the morning of December 27, 1945, when plaintiff's automobile collided with one of the cars of defendants' freight train at a point in the village of Medford where the tracks of defendants' railway cross a public highway. Plaintiff was driving alone at the time of the collision and was the only eyewitness to the accident. He was driving east and was familiar with the road and crossing. East of the crossing is a sloping hill or elevation in the road estimated to be about 100 feet in height. It appears from the record that the road was somewhat rough and slippery at the time of the accident. Plaintiff testified that as he approached the crossing he looked for a train and opened the window of his car, but that he did not see the train until he was about 20 feet away from it. He then put on his brakes, but, being unable to stop, he ran into the side of a tank car at the crossing. Plaintiff claims that he was driving about 15 or 20 miles an hour just prior to the collision. He testified that he worked for about 10 or 15 minutes after the collision trying to extricate his car and that during that time the train did not move, nor did he see any of the train crew around it. The only sign on the west side of the crossing was the usual cross-buck sign with the words "Railroad Crossing" and "Tracks" printed upon it. The sign was about five or six feet from the main track and to the right of the highway roadbed. A similar sign was placed on the east side of the crossing.

The first matter for consideration is whether defendants' train closed the crossing for traffic for a longer period than ten minutes

in violation of M. S. A. § 219.383. Subds. 4 and 5 thereof provide respectively as follows: ·

"No railway corporation shall permit any public road or street crossing a railroad track to be closed for traffic by a standing car, train, or engine or other railroad equipment for a longer period than ten minutes, provided, this section shall not apply to cities of the first class which regulate obstruction of streets by ordinance."

"Any railway corporation violating any provision of this section shall be guilty of a misdemeanor and upon conviction thereof shall be liable for a fine of not less than $25.00 nor more than $100."

The only direct evidence is furnished by E. S. Adams, conductor on defendants' train involved in the collision, who testified as follows:

"Q. Now, when you were standing in Medford there, was your train across this crossing that is involved in this accident?

"A. Yes, sir.

"Q. And for approximately what length of time was it there?

"A. Three minutes from the time we stopped to the time we started."

He also testified:

"Q. And how long were you in Medford?

"A. We arrived in Medford at 3:30 and we departed 3:33 a. m."

The only testimony produced by plaintiff as to the length of time the train was on the crossing *prior to the accident* was supplied by Hilda Klegin. She testified that she was spending the night of December 26 at the home of her parents, the Kunz family, in Medford. The Kunzes resided about two blocks west of the crossing where the accident occurred. She said that she was awakened by the noise of a Rock Island train about three o'clock in the morning of December 27. She heard a train come in and stop, but did not see it. "All I heard was the steam or something from the engine." About 25 minutes or a half hour after she heard the train stop, plaintiff knocked at the door of the Kunzes' home to seek aid for his injuries. Mrs. Klegin said that she remained awake from the time she

was first awakened by the train until plaintiff arrived and that the train she heard did not leave during that time. Defendants' conductor on the train involved in the collision and the telegraph operator at Faribault testified that the train was propelled by a Diesel engine, without a boiler, and that there was no steam to escape or run off. The conductor did testify, however, that the noise from the air brakes when the train stopped at 3:30 a. m. might have been heard for some distance.

There seems to be considerable confusion as to various trains which went through Medford at the approximate time of the collision. From the record, it appears definitely that the train here involved was defendants' freight train No. 911, which reached Medford at 3:30 a. m. according to the testimony of the conductor. This train was traveling south on the main line. It was under orders to meet the second section of train No. 916, going north, at Medford. It further appears that another of defendants' freight trains, No. 912, steam-powered, going north, was running about one-half hour ahead of the second section of No. 916. According to the record, No. 912 must have passed through Medford around 3 a. m., because it reached Faribault at 3:26 a. m. after passing No. 911, southbound, at Casper, a short distance south of Faribault. Train No. 911 left Faribault at 3:06 a. m. The ordinary running time between Medford and Faribault, depending somewhat on the size of the train, was approximately 20 minutes, except where a southbound train stopped at Faribault. In that case, the testimony was that it took about three to four minutes longer because of a hill between Faribault and Medford. According to the conductor's testimony, when train No. 911 reached Medford at 3:30 a. m. it had 85 cars, a caboose, and a Diesel engine. There is a passing track in Medford east of and parallel with the main line. The passing track is about two-thirds of a mile in length and will hold 83 cars. The conductor on No. 911 testified that he first stopped his train at Medford at 3:30 a. m. and departed at 3:33 a. m. and that during that interval they met and passed the second section of train No. 916 going north, which arrived at Medford about the same time as his train. The northbound

train pulled onto the passing track and continued on north on the main line as soon as train No. 911 cleared the main line at the north end of the passing track. The station office at Medford was not open at that hour of the morning, so there is nothing in the record to show whether steam-powered train No. 912 stopped or not. If this was the train that awakened the witness Klegin, it clearly could not have stopped in Medford for 25 or 30 minutes, as the record shows that it arrived at Faribault at 3:26 a. m. Inasmuch as the second section of No. 916, also steam-powered, arrived at Medford from the south at approximately the same time that Diesel-powered No. 911 arrived from the north, it appears that the second section of No. 916 could not have been the train that awakened Mrs. Klegin, as the record is quite conclusive that it did not arrive in Medford until about 3:30 a. m.

Plaintiff had the burden of proving that the train involved, No. 911, obstructed the crossing for more than ten minutes. "A party must establish his allegations. He who affirms must prove." 2 Dunnell, Dig. § 3468. We are here confronted with the direct testimony of the conductor of the train involved that he stopped his train at 3:30 a. m. and started it again at 3:33 a. m., which he said was the entire time the train occupied the crossing, with the exception of "about two minutes more getting pulled off of it." To offset this, the only testimony offered by plaintiff that the train involved was on the crossing more than ten minutes *prior to the collision* was that of Mrs. Klegin. Plaintiff testified that *after his car hit the train* he spent 10 or 15 minutes at the crossing attempting to extricate his automobile, that during that time the train continued to remain on the crossing, and that he saw no members of the train crew around. We are considering here the length of time the train was on the crossing *prior to the collision*. It does not appear from the record that plaintiff proved by a fair preponderance of the evidence that the train involved was on the crossing more than ten minutes *prior to the collision*. It is argued on behalf of plaintiff that the jury in returning a verdict "evidently disbelieved the testimony of defendants' conductor who said his train only stopped at the crossing for

three minutes." We have no way of knowing just what the jury might have believed in that respect; but, even though the testimony of defendants' conductor was disregarded by the jury, the burden of proving that the train was on the crossing for more than ten minutes was still upon the plaintiff.

"* * * The general rule is that one suing for damages for injuries, either to person or property, occasioned by the alleged negligence of the defendant, has the burden of proving, by a preponderance of the evidence, that the defendant was negligent in the performance of some duty owing to the plaintiff, as charged in the declaration or complaint, or that he breached a statutory duty owing to the plaintiff, and of showing further that such negligence occasioned loss or injury to the plaintiff in the manner described therein." 38 Am. Jur., Negligence, § 285.

In McGerty v. Nortz, 191 Minn. 443, 445, 254 N. W. 601, 602, this court said:

"This is a negligence case. Plaintiff therefore had the burden of proving that defendant was guilty of negligent conduct." (Citing cases.)

See, also, 2 Dunnell, Dig. & Supp. § 3469.

We believe that in this case the somewhat nebulous testimony of plaintiff's witness Klegin was not sufficient to prove that the train in question was on the crossing for more than ten minutes. While Mrs. Klegin's testimony may be regarded as consistent with plaintiff's theory that the train was on the crossing for more than ten minutes, that alone is not enough.

In Smock v. Mankato Elks Club, 203 Minn. 265, 266, 280 N. W. 851, 852, a case in which action was brought by plaintiff for damages alleged to have been caused by defendant in negligently allowing inflammable material to collect upon its floors during a New Year's Eve party and for negligence in failing to provide receptacles for used matches and other refuse, this court said:

"* * * The whole matter is within the realm of speculation and conjecture. It was not necessary for the plaintiff to exclude every

other reasonable hypothesis by the circumstantial evidence which she introduced, but a jury may not be permitted to guess as between two equally persuasive theories consistent with the circumstantial evidence. The evidence must be something more than consistent with the plaintiff's theory of how the accident occurred. Reasonable minds functioning judicially must be able to conclude from the circumstances that the theory adopted by the verdict outweighs and preponderates over any other theory." (Citing cases.)

■ Plaintiff contends that defendants were guilty of the violation of at least three statutes, as pointed out in Flaherty v. G. N. Ry. Co. 218 Minn. 488, 16 N. W. (2d) 553. In the Flaherty case, the three statutes referred to were M. S. A. §§ 160.34 and 616.01, and Minn. St. 1941, § 616.31. In that case, the three statutes above referred to, applicable to obstruction of highways, were considered as being *in pari materia* or as prohibiting any obstruction of a highway except to the extent authorized by § 616.31, then in force. Section 616.31 prohibited the obstruction of a public road or street with railway cars, engines, or trains "except for a sufficient time, not exceeding ten minutes, to couple or separate the cars." The court pointed out in the Flaherty case that the time of such authorized obstruction had been exceeded. Two of the three statutes, to-wit, §§ 160.34 and 616.01, are now in force and were at the time the Flaherty case was decided. However, § 616.31, the third statute then in force, was repealed in 1945, and § 219.383 was enacted at that time. These three statutes, §§ 160.34, 616.01, and 219.383, must likewise be considered as being *in pari materia* and are not to be construed separately in the instant case. All three prohibit the obstruction or closing of a street or highway, except that § 219.383, subd. 4, provides that "No railway corporation shall permit any public road or street crossing a railroad track to be closed for traffic by a standing car, train, or engine or other railroad equipment for a longer period than ten minutes, * * *." When that time is exceeded, all three statutes are violated. In construing these statutes with reference to each other, we are endeavoring to ascertain the intent of the legislature in enacting these laws. 6 Dunnell, Dig. &

Supp. § 8940. And, insofar as the sections of the statutes considered together contain specific provisions, such specific provisions must be held to control the general provisions thereof. 6 Dunnell, Dig. & Supp. § 8970. Applying these general rules to the statutes before us, it appears that §§ 160.34 and 616.01 prohibit, in general terms, the obstruction of public thoroughfares, while § 219.383 forbids specifically the closing of public roads or streets by railroad equipment "for a longer period than ten minutes." It is only reasonable to attribute to the legislature an intention to legalize, by § 219.383, subd. 4, the closing of a public road or street crossing a railroad track by a railway corporation with its equipment for a period not longer than ten minutes, except in cities of the first class which regulate obstruction of streets by ordinance. When that time is exceeded, there is no basis for saying that the obstruction or closing is lawful, and consequently it falls under the ban of all three statutes, as the violation did in the Flaherty case. It follows that where there is a violation of § 219.383, subd. 4, there is also a violation of §§ 160.34 and 616.01. The distinction between the Flaherty case and the instant case is that in the former the period of permissible obstruction under the statute then in effect was such time as was required to couple or separate cars, "not exceeding ten minutes," while in the case before us § 219.383 provides that no public road or street crossing a railroad track shall be closed for traffic by a standing car, train, or other railroad equipment "for a longer period than ten minutes." There could have been a violation of § 616.31 (repealed) in less than ten minutes if it required less than that time to couple or separate cars, but there could be no violation of § 219.383 in less than ten minutes. We have reviewed the record and conclude that plaintiff's evidence was not sufficient to sustain his claim that defendants' train was on the crossing here involved for a longer period than ten minutes. That being the case, the evidence fails to show a violation of any of the statutes.

█ Plaintiff by his own testimony appears to have been guilty of contributory negligence as a matter of law. He testified that he was thoroughly familiar with the road and crossing, that the brakes on

his car were in good condition, and that he knew the road on which he was traveling was rough and. slippery. He had his car lights in the lower beam, so that it would put the light "more on the road and [he] could see better because it was foggy." He said he could see the road ahead about 20 or 30 feet with the lights so adjusted. He was traveling at about 15 or 20 miles an hour. At the speed he was traveling just prior to the accident and under the conditions, he said he could stop in about 50 or 60 feet.

"Q. Well, then, as I understand your testimony then, it would take a matter of some 50 or 60 feet on the conditions as they were on the evening in question to bring your car to a stop with the brakes in the condition that they were, the road conditions what they were, and at the speed at which you were traveling?

"A. Yes.

\*    \*    \*    \*    \*

"Q. Do you think it would require more distance to stop than 50 or 60? I want your best judgment.

"A. Well, I would say about that."

It is obvious from plaintiff's testimony that under the conditions that confronted him just prior to the collision, approaching a railroad crossing he was familiar with, that he was driving his car at a rate of speed greater than would permit him to bring it to a stop within the range of his own vision. It is true that he testified that as he approached the crossing he looked for a train and even opened the window of his car, but did not see the train until he was about 20 feet away. He seems to have taken what he regarded as the necessary precautions as he approached the crossing. However, under the rulings of this court, it would be necessary for him to keep his car under such control as to permit him to bring it to a stop within the distance illuminated by his lights.

In Wessman v. Scandrett, 217 Minn. 312, 314-315, 14 N. W. (2d) 445, 446, the court said:

"* * * A man of ordinary prudence would, as a matter of law, after seeing the highway sign, have realized that in approaching the

crossing in such a dense fog he should proceed at a speed which would permit him to stop within the distance which was illuminated by his lights."

Again, in Olson v. D. M. & I. R. Ry. Co. 213 Minn. 106, 111, 5 N. W. (2d) 492, 495, the court said:

"It is contended that the fog was a distracting circumstance. Distracting from what? What does it draw the driver's attention away from or to? It was a warning of the most forceful and potent character directing the driver's attention to the necessity resting upon him to drive carefully and slowly enough to admit of stopping to avoid striking any object which might reasonably be expected to be upon the highway. Other roads intersect highways. Railroads intersect highways at grade. People travel such intersecting roads. Trains move across such grade crossings, having the right of way, as the court charged. Other vehicles might be traveling on the same highway at slow speed. Plaintiff was charged with that knowledge and nevertheless drove at a speed which prevented him from stopping in time to avoid a collision. If the fog was as thick as he claims, the duty devolved upon him to exercise care commensurate with the extreme hazard to which it exposed him."

In view of the fact that from plaintiff's own testimony he was able to see for a distance of only 20 to 30 feet as he approached the crossing on the night of the collision and his further testimony that under the conditions as they were that night and the speed at which he was traveling it would take some 50 or 60 feet for him to stop his car, we are compelled to conclude that under our rulings he was guilty of contributory negligence as a matter of law and is not entitled to recover on the theory of his case.

Reversed and judgment ordered for defendants.