## FRANK SCHUBITZKE v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILROAD COMPANY.[1]

March 11, 1955.

No. 36,497.

*Hunt, Palmer, Hood & Crassweller, Fordyce W. Crouch,* and *Edward M. Glennon,* for appellant.

*Lewis, Hammer, Heaney, Weyl & Halverson,* for respondent.

[1]Reported in 69 N. W. (2d) 104.

DELL, CHIEF JUSTICE.

Action to recover for personal injuries and property damage arising out of a grade-crossing collision between plaintiff's automobile and one of defendant's freight trains. There was a verdict for the plaintiff for $3,985. Defendant appeals from an order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

The accident giving rise to this controversy occurred on January 12, 1953, between 9:00 and 10:00 p. m. in Duluth, Minnesota. Plaintiff, driving his 1950 Chrysler automobile, was proceeding in a general westerly direction on Railroad street. Several curved spur tracks cross Railroad street connecting a railroad yard on the north of the street and a series of house tracks on the south. Plaintiff's automobile was struck by the forward end of a boxcar, the lead car of a string of nine freight cars being pushed by defendant's locomotive upon one of these spur tracks in a general southeasterly direction. According to plaintiff, he did not see the boxcar until he was 20 to 30 feet away from it, at which time its forward end was close to the center of the street. Believing that he would not be able to stop in time to avoid a collision, he cut sharply to his left and stepped hard on the accelerator in an effort to drive around the boxcar. The boxcar came in contact with the right rear side of plaintiff's automobile, which went out of control and hit a pole about 100 feet from the point of impact. Plaintiff's head went through the right front windshield causing lacerations and a minor concussion.

Plaintiff, 36 years old at the time of trial, was an experienced driver employed at the time of the accident as a truck driver. His eyesight, hearing, and general physical condition were good. He had owned the automobile involved for several months prior to the accident and was thoroughly familiar with its operation. The vehicle was equipped with modern sealed-beam headlights and hydraulic brakes and, according to plaintiff, "was in perfect shape." Plaintiff was familiar with Railroad street, having frequently driven over it at night on his way to work. He knew that several spur tracks

crossed the street and had previously seen switching operations conducted there.

The accident occurred on a dark but clear winter evening. The street was dry and there was no precipitation of any kind. The lights of plaintiff's automobile were on low beam. There were no lights on the freight cars and the nearest street light was approximately 750 feet from the crossing. To the east of the crossing on the northerly side of the road there was a stairway leading to a pedestrian overpass. While this structure did obstruct the view to the north, its westerly edge was a distance of 220 feet from the crossing on which the accident occurred. The only obstructions to vision from the stairway to this crossing were some power poles spaced about 120 feet apart along the north side of the street. A railroad "crossbuck" sign was located near the stairway and two others were located on the southerly side of the street but past the scene of the accident. By his own testimony, the plaintiff was traveling between 20 and 30 miles per hour, slowing down for rough spots in the road. There was some conflict as to the condition of the road. Plaintiff passed the pedestrian overpass and crossed two of the spur tracks. Although he was not aware of the exact location of the third spur track on which the accident occurred, he knew that there were more tracks farther ahead.

The spur track on which the accident occurred came off of what is called a commerce or joint track to the north of and running parallel to Railroad street. As the spur track approaches Railroad street, it curves toward the south so that it crosses the street diagonally in a southeasterly direction. For about 30 minutes prior to the accident defendant's employees had been conducting switching operations across the street. Shortly before the collision, the locomotive and freight cars involved had been backed clear of the crossing on the north side of the street, with the engine attached to the west end of the string of cars and facing east on the commerce track, and the boxcar which collided with plaintiff's automobile standing on the spur track, possibly extending slightly into the north edge of the street. The locomotive then began pushing the freight cars across

the street and, according to the locomotive engineer, had attained a maximum speed of four miles per hour before the impact.

■ Defendant has assigned numerous errors in connection with the denial of its motion for a new trial. We shall first consider, however, defendant's contention that the trial court erred in denying its motion for judgment notwithstanding the verdict on the ground that plaintiff was contributorily negligent as a matter of law. It is elementary that, unless fair-minded men could reasonably come to but one conclusion, the issue of contributory negligence was properly submitted to the jury for its determination.[2] It is defendant's position that the evidence compels a finding that plaintiff either failed to keep a proper lookout or that he was driving at such a speed that he could not stop within the distance illuminated by his headlights. It is argued that in either event he was contributorily negligent as a matter of law.

The evidence does not show with any degree of certainty the distance illuminated by the headlights of plaintiff's vehicle[3] or the exact distance within which he could stop his automobile when traveling at 30 miles per hour.[4] There has never existed in this state any hard and fast rule that one who drives a motor vehicle at such a rate of speed that he cannot stop within the range of his headlights is negligent as a matter of law.[5] In considering this question in Orrvar v. Morgan, 189 Minn. 306, 309, 249 N. W. 42, 43, we held that, taking into account all the circumstances of the case such as the nature of the accident, weather conditions, and condition of the highway, all reasonable minds functioning judicially would conclude

[2]Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395; Lemke v. Chicago, R. I. & P. R. Co. (8 Cir.) 195 F. (2d) 989; 13 Dunnell, Dig. (3 ed.) § 7033.

[3]M. S. A. 169.60(3) provides: "All road lighting beams shall be so aimed and of sufficient intensity to reveal a person or vehicle at a distance of at least 100 feet ahead."

[4]M. S. A. 169.67, subd. 5, requires brakes sufficient to stop a vehicle within a distance of 30 feet when traveling 20 miles per hour upon dry asphalt.

[5]Annotations on the "range of vision" rule may be found in 87 A. L. R. 900 and 97 A. L. R. 546.

that the driver was contributorily negligent if he was "traveling at a rate of speed that would make it impossible to stop or turn his car within the space illuminated by his headlights." This rule has been both applied[6] and rejected[7] by this court on repeated occasions. In the recent case of Jurgensen v. Schirmer Transp. Co. 242 Minn. 157, 162, 64 N. W. (2d) 530, 534, we said:

"* * * We feel that the Orrvar case has been distinguished so often that it can no longer be considered as an authority except in the limited field covered by its facts."

To adopt the "range of vision" rule as a rigid formula to be applied regardless of the circumstances would be unnecessarily severe as well as impractical in many situations. In accordance with the more recent decisions of this and other courts,[8] we are of the opinion that, rather than promulgate the rule and create exceptions when the circumstances necessitate, the determination in each case should be made on the basis of the underlying concept involved, namely: Did the driver adhere to the standard of care to be expected from a reasonably prudent person under similar circumstances? If, under the particular facts of a given case, the failure to drive within the range of vision does not conclusively constitute a deviation from the standard of care exercised by the ordinarily prudent person, then the driver's failure to operate the vehicle at such a speed should be submitted to the jury merely as evidence bearing on his negligence. To do otherwise would be to apply an arbitrary standard of behavior without regard to surrounding circumstances—a policy which we have expressly denounced.[9]

---

[6]*E.g.*, Spartz v. Krebsbach, 226 Minn. 46, 31 N. W. (2d) 917; Mlenek v. Fleming, 224 Minn. 38, 27 N. W. (2d) 800.

[7]*E.g.*, Twa v. Northland Greyhound Lines, Inc. 201 Minn. 234, 275 N. W. 846; Tully v. Flour City Coal & Oil Co. 191 Minn. 84, 253 N. W. 22.

[8]See, 22 Minn. L. Rev. 877; 34 Ill. L. Rev. 65; 30 N. C. L. Rev. 62; 13 Notre Dame Law 324.

[9]Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327.

Every automobile driver is charged with the responsibility of proceeding with ordinary care.[10] The evidence in the instant case shows that the plaintiff was thoroughly familiar with the street involved, the location of the tracks to the north and south, and the numerous spur tracks extending across the street. He had previously observed switching operations conducted in that area and knew that the lighting conditions were not good. Plaintiff, having crossed two of the spur tracks prior to the accident, realized that there were more ahead. He could reasonably anticipate movements of cars across the tracks at any time. It is not conceivable that under such circumstances any reasonably prudent person would travel at a speed which would not permit him to stop within the distance illuminated by his headlights. Traveling at a speed which would not permit him to so stop in that area under the conditions known to exist would be an invitation to disaster and clearly, we feel, would constitute negligence as a matter of law.

■ If we assume that plaintiff was driving at a speed permitting him to stop within the range of his vision as an ordinarily prudent man would have done, we are then compelled to conclude that he failed to exercise reasonable care with respect to lookout. The weather conditions were ideal for that time of the year, and plaintiff's vision for all practical purposes was unobstructed for a distance well in excess of 200 feet from the crossing. Plaintiff submits that one of the reasons why he failed to see the boxcar was that he was maneuvering his automobile to avoid rough spots in the surface of the road near the scene of the accident. There is clearly no merit in the argument that such conditions relieve a driver from exercising reasonable caution in keeping a proper lookout. If anything, unsatisfactory road conditions command greater care in the operation of a vehicle.[11]

[10]See, Dahlquist v. Minneapolis & St. L. Ry. Co. 230 Minn. 203, 41 N. W. (2d) 587; Dreyer v. Otter Tail Power Co. 205 Minn. 286, 285 N. W. 707, 287 N. W. 13; 8 Dunnell, Dig. (3 ed.) § 4167b.

[11]See, Rogge v. G. N. Ry. Co. 233 Minn. 255, 47 N. W. (2d) 475; Anderson v. G. N. Ry. Co. 147 Minn. 118, 179 N. W. 687; Olson v. Duluth, M. & I. R. Ry. Co. 213 Minn. 106, 111, 5 N. W. (2d) 492, 495.

While each case must be determined by its own particular circumstances, we have frequently held that, where a train is either moving or standing across a railroad crossing, the driver of an automobile colliding with the side of the train is, in the absence of unusual circumstances, negligent as a matter of law.[12] Plaintiff seeks to distinguish these cases on the basis that a boxcar emerging from darkness at the side of the road does not constitute the same warning as a train occupying the entire crossing. Not even extreme speculation can dispel the conclusion that in the instant case the boxcar was substantially in the street at a time when the plaintiff was far enough away so that, had he exercised reasonable care as he was required to do, he would have seen the freight car in ample time to have avoided the collision. According to plaintiff's own testimony, the boxcar occupied his entire lane of travel when he first saw it, and his testimony in this regard is well supported by other evidence. Without relating any mathematical calculations based on the maximum possible speed of the boxcar and the maximum speed plaintiff claims his automobile was traveling, it is obvious that, when plaintiff was 100 feet from the crossing, the boxcar was extending well into plaintiff's lane of travel. At that distance the automobile's lights should have disclosed to plaintiff the presence of the boxcar, and, if he had been reasonably alert and driving within the range of his vision, he should have been able to stop his vehicle in time to avoid the collision.

The inescapable conclusion is that plaintiff simply was not devoting the attention to the road that was required of him or else was traveling at an excessive rate of speed under the circumstances. Such lack of care in either event constitutes negligence as a matter of law. In view of our conclusion that plaintiff was contributorily negligent as a matter of law, it is unnecessary to consider defendant's other assignments of error.

Reversed and judgment ordered for defendant.

---

[12]*E.g.*, Wessman v. Scandrett, 217 Minn. 312, 14 N. W. (2d) 445; Sullivan v. Boone, 205 Minn. 437, 286 N. W. 350; see, Chicago, M. St. P. & P. R. Co. v. Slowik (8 Cir.) 184 F. (2d) 920.