Frederick James **TUCKNER**, Appellant,

v.

Daniel Mark **CHOUINARD**, Respondent.

No. C0–86–1923.

Court of Appeals of Minnesota.

June 16, 1987.

William E. Jepsen, St. Paul, for appellant.

Daniel D. Reisman, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and LANSING and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from an order denying appellant's motion for a new trial or a judgment notwithstanding the verdict (JNOV). Appellant Frederick Tuckner brought an action against Daniel Chouinard for injuries sustained in an automobile accident. The jury returned a verdict finding that appellant had sustained injury, but that he had suffered no loss in earnings and that respondent was not negligent. We affirm.

1. Appellant later married respondent's mother.

2. An internist treated appellant before and after the accident, testified that pain related to a broken bone, like appellant's broken clavicle,

## FACTS

Shortly after 12:30 a.m. on November 5, 1983, appellant Tuckner picked up respondent Chouinard, his girlfriend's son,[1] to go deer hunting up north. After driving about two hours, appellant started to get tired. He awakened respondent and asked him to drive. Respondent was tired, so he walked around the car and drank some soda. He drove while appellant slept. After an hour, respondent stopped because he was getting tired again. He got out and walked around the car. Respondent continued to drive with the window open a crack and the heater turned off.

When respondent approached Cook, Minnesota, he slowed the car to 45 or 50 miles per hour. As he rounded a corner, a deer appeared at the right side of the road. Respondent did not see the deer until it was coming onto the blacktop 10 to 15 feet in front of the car. He swerved to the left, hit the gravel on the shoulder of the other side of the road, and lost control of the vehicle. The car went into the ditch, hit a field road, and flipped, landing on its nose, partially submerged in swamp water.

When respondent pulled appellant out of the car, he noticed that appellant had "done something to his shoulder and he had a big knot on his forehead." Appellant did not appear to be conscious enough to carry on a conversation until about fifteen minutes later. At that time, appellant and respondent were inside a truck that happened to pass.

After the accident, the right side of appellant's face was swollen and discolored. He also had a broken clavicle, injured ribs, a resolving concussion, and an abrasion over his forehead. Appellant later suffered pneumonia that may have been related to the accident.[2]

Appellant testified that when it healed, the fractured clavicle formed a bony ridge

may suppress coughing. As a result, fluids are not expelled from the lungs, and infection may follow.

that now protrudes from under the skin and causes discomfort, especially when he carries a rucksack on national guard maneuvers. Appellant also suffers severe discomfort when his neck is exposed to the cold.

Since the accident, appellant suffers frequent headaches, ranging from dull, everyday headaches to headaches so severe appellant cannot open his right eye because the light is painful, and he feels his head will explode. The headaches interfere with appellant's ability to concentrate and cause him to miss work.[3] Appellant also suffers from tinnitus, a constant high pitched ringing in his ears.

After trial, the jury returned a special verdict finding appellant suffered injuries, but that these injuries did not cause him to lose work, and that respondent was not negligent.

Appellant moved for a new trial or, in the alternative, JNOV. The trial court denied the motions, and Tuckner appeals.

## ISSUES

1. Was the jury verdict supported by the evidence?

2. Was the jury verdict influenced by passion and prejudice?

## ANALYSIS

Appellant contends the trial court erred when it denied his motion for a new trial or for JNOV. He claims the verdict is not justified by the evidence, and that the jury awarded insufficient damages due to the influence of passion or prejudice. Minn.R. Civ.P. 59.01(5) and (6).

### I.

*Was the verdict supported by evidence?*

■ A party challenging a jury's apportionment of negligence must show the ver-

dict is manifestly and palpably contrary to the evidence. *Rieger v. Zackoski,* 321 N.W.2d 16, 24 (Minn.1982).

The standard for determining the propriety of an order denying judgment notwithstanding the verdict is whether there is any competent evidence reasonably tending to sustain the verdict.

*Parkside Mobile Estates v. Lee,* 270 N.W.2d 758, 761 (Minn.1978) (quoting *Seidl v. Trollhaugen, Inc.,* 305 Minn. 506, 232 N.W.2d 236 (1975) (footnote omitted)). Reviewing the trial court's refusal to enter JNOV or grant a new trial on the question of liability, this court will review the entire evidence before the trial court. *Sandhofer v. Abbott-Northwestern Hospital,* 283 N.W.2d 362, 365 (Minn.1979). "[T]he verdict must be sustained if it is possible to do so on any reasonable theory of the evidence." *Hestad v. Pennsylvania Life Insurance Co.,* 295 Minn. 306, 311, 204 N.W.2d 433, 437 (1973). All the evidence must be taken into account and viewed in the light most favorable to the verdict. This court may not weigh the evidence or judge credibility. *Pomani v. Underwood,* 365 N.W.2d 286, 289 (Minn.Ct.App.1985).

In accordance with 4 *Minnesota Practice,* CIV. JIG II, 301 (1986), the trial court instructed the jury that a driver of a vehicle on a public highway has the duty to maintain a reasonable lookout and keep the vehicle under reasonable control. The court instructed the jury that the existing circumstances, and the known and forseeable dangers, would bear upon the determination whether the driver had violated that duty.

Appellant contends the evidence unequivocally establishes that respondent breached his duty to maintain a proper lookout when driving on a public highway and to keep reasonable control of his vehicle. Appellant cites *Schubitzke v. Minneapolis, St. Paul & Sault Ste. Marie Railroad Co.,*

---

3. Appellant has taken personal business days instead of sick days because he feared he would never be able to regain his sick leave benefits if he accumulated too many sick days. Appellant lost five years worth of sick leave benefits when he took three and one half months off work after the accident.

244 Minn. 156, 69 N.W.2d 104 (1955), for the proposition that every driver on a public highway has a duty to maintain a reasonable lookout and a duty to keep the vehicle under reasonable control.[4] We do not agree that *Schubitzke* is controlling in the fact situation that exists here.

Appellant contends evidence of respondent's fatigue was "overwhelming," and that the prudent person would have relinquished the wheel. Respondent testified as follows:

Q. Do you feel that you were in any way inattentive just prior to the accident?

A. I may have been tired but—because I hadn't slept. I don't understand what you mean by inattentive.

Q. Were you not paying attention to what was on the road?

A. Well, I was paying attention to where I was driving but maybe not enough to see where the deer came onto the road.

Respondent testified that when he saw the deer, "almost the whole front half was almost on the tar." He also testified the ditches appeared too deep to enable him to see the deer before it got onto the shoulder of the road.

▮ Appellant argues the mere fact that respondent admitted that he lost control of his vehicle constituted an admission of negligence. We disagree. Not every instance of loss of control of a vehicle is, by definition, negligent. A driver may unavoidably lose control of his vehicle for a number of reasons other than negligence. It is a jury question whether, under the circumstances, respondent's actions constituted negligence.

▮ Here respondent was the only witness to the accident. The evidence could have supported the jury's conclusions that appellant had his high beams on; that he had slowed the vehicle to 45 or 50 miles per hour; that as he came around a turn in the road he saw the deer, which was just coming onto the road; that appellant swerved to the left because there was no room to pass the deer on the right; and that the car hit the gravel at the left side of the road, causing respondent to lose control of the vehicle. A conclusion that respondent was able to keep a proper lookout, and that he unavoidably lost control of his vehicle because he was forced to swerve to avoid the deer that suddenly appeared, is consistent with the facts.

II.

*Passion and Prejudice*

Although our finding that the record supports the verdict of no negligence is dispositive, we will briefly address appellant's second argument. Appellant contends the jury's failure to find appellant suffered a loss of earnings was influenced by passion or prejudice.

Appellant claims that by inquiring whether any juror would have problems suing a close friend or relative, respondent "made a very appropriate suit seem inappropriate." On direct examination, appellant's counsel elicited testimony that appellant is respondent's stepfather. The trial court granted appellant's request for a jury instruction that one has the right to bring a claim against a friend or relative.

The jury found appellant had sustained the following damages: $2000 for embarrassment and emotional distress; $2000 for pain, disability and disfigurement; $3000 for future embarrassment, emotional distress, pain, disability, disfigurement, and loss of earning capacity. The jury found,

---

**4.** In *Schubitzke,* plaintiff motorist was driving at night along a familiar road when he collided with a boxcar. Plaintiff had already crossed two spur tracks, and knew more tracks were ahead. He had previously observed switching operations on the tracks crossing the road. The supreme court in *Schubitzke* reversed the jury verdict, and held the driver was either driving at an excessive speed under the circumstances or had failed to devote sufficient attention to the road. *Id.* at 162, 69 N.W.2d at 108.

however, that respondent suffered no loss of earnings. As an argument for an inconsistent verdict, appellant points out the fact that his missed work was uncontested.

Although bothered by the inconsistency in the jury's finding of damages, the trial court refused to guess why the jury did not award damages for lost work, especially in view of the finding of no negligence. We will not replace the jury's findings with our own. We find the jury's failure to award appellant loss of earnings is not inconsistent with every theory except passion and prejudice.

The jury's award of no loss of earnings could be the result of appellant's somewhat confusing testimony on the issue of sick leave, which he testified he exhausted for the next five years, and of the "personal days" he was taking in lieu of sick leave. The jury may have erroneously concluded appellant was receiving some pay during the time he was on sick leave and personal days, although appellant testified that sick days and personal days are non-pay.

We cannot determine what went through the jury's mind when it refused to award anything for lost work time. The jury did award appellant $7000 in present and future damages. This amount negates appellant's contention that the damage award was so low and thus tainted by passion and prejudice on the question of lost time that he is entitled to a new trial as a matter of law. The trial court's denial of appellant's motion for a new trial or JNOV was proper.

## DECISION

The record supports the jury's refusal to find respondent negligent in causing appellant's injuries. The jury's failure to find appellant suffered a loss of earnings was not, as a matter of law, the result of passion or prejudice.

Affirmed.